996 A.2d 473

COMMONWEALTH of Pennsylvania, Appellant

v.

Thomas BROWN, Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 21, 2009.

Decided May 27, 2010.

Priya M. Travassos, Hugh J. Burns, Jr., Philadelphia Dist. Attorney's Office, for the Com. of PA., appellant.

Karl Baker, Defender Ass'n of Philadelphia, Mark Cichowicz, for Thomas Brown, appellee.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## *OPINION*

Justice EAKIN.

Narcotics Field Unit Officer Robert McDonnell, a 13–year police force veteran, received a tip from a known, confidential informant, stating appellee, Thomas Brown, would be distributing prescription pills between 3:30 and 5:30 p.m. at a particular intersection. The informant described Brown as a white male, age 27 to 28, standing 5'9" to 5'11", and weighing 150 to 160 pounds. He also stated Brown would be carrying a gun and driving a mid–1990s Ford Taurus with a specific license plate number. Officer McDonnell went to the intersection at the specified time and observed Brown, who matched the informant's description, driving the vehicle the informant described. He watched Brown leave the vehicle empty-handed, return several minutes later, place a brown paper bag in the trunk, and drive away.

Officer McDonnell notified back-up officers to conduct an investigative stop of Brown's vehicle. They pulled Brown over and saw a bottle of prescription pills on the front seat. After obtaining a warrant to search the vehicle, officers discovered various other prescription drugs and a handgun in the trunk,

as well as a notebook entitled "Thomas Brown money list" in the glove compartment. Brown was charged with possession with intent to deliver prescription pills and other offenses arising from the stop. Brown filed a pre-trial motion to suppress all physical evidence seized. At the suppression hearing, Officer McDonnell testified he "used" the informant before, but gave no specifics as to the informant's reliability; Brown presented no evidence. The trial court granted the motion to suppress, finding no reasonable suspicion warranting the stop. The Commonwealth appealed.

The Superior Court affirmed the trial court's decision. *Commonwealth v. Brown,* 952 A.2d 1185 (Pa.Super.2008). The court found the Commonwealth failed to establish the confidential informant was reliable, stating:

Any experienced officer knows that he has to present the number of times he used the informant, the number of times he made arrests and found drugs based on his information, the number of convictions as a result, etc. Based on the fact that the officer did not offer any such evidence, it seems clear that the informant was *not* ever found to be reliable. Thus, any statement by the informant must be considered akin to an anonymous tip, or at most a tip from a named citizen. Therefore, there must be corroboration to provide reasonable suspicion.

*Id.,* at 1189 (emphasis in original). The court proceeded to analyze the stop pursuant to *Commonwealth v. Goodwin,* 561 Pa. 346, 750 A.2d 795 (2000) (Opinion Announcing the Judgment of the Court), which states an anonymous tip gives rise to reasonable suspicion only when it provides predictive, insider information corroborated by police. *Id.,* at 799. The Superior Court concluded the officers lacked sufficient basis for the stop because the quality of information was low and came from an unreliable source, and there was little corroboration as to the facts. *Brown,* at 1190. We granted allocatur to decide "Whether the Superior Court erred in determining police lacked reasonable suspicion to stop [Brown's] vehicle based upon the information provided by the known, but histo-

ry-less, confidential informant." *Commonwealth v. Brown*, 601 Pa. 480, 974 A.2d 1162 (2009) (table).

In reviewing an appeal by the Commonwealth of a suppression order, we may consider only the evidence from the appellee's witnesses along with the Commonwealth's evidence which remains uncontroverted. Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions. *Commonwealth v. Snyder*, 599 Pa. 656, 963 A.2d 396, 400 (2009) (citation omitted).

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures.[1] Article I, § 8 of the Pennsylvania Constitution,[2] though similarly phrased, generally provides greater protection than that provided by the Fourth Amendment, because "the core of its exclusionary rule is grounded in the protection of privacy while the federal exclusionary rule is grounded in deterring police misconduct." *Commonwealth v. Williams*, 547 Pa. 577, 692 A.2d 1031, 1038 (1997). However, this Court has held that federal jurisprudence, specifically *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (investigatory stop subjecting suspect to stop and limited period of detention requires reasonable suspicion criminal activity is afoot), sets forth the reasonableness standard for Article I, § 8 of the Pennsylvania Constitution. *In re D.M.*, 566 Pa. 445, 781 A.2d

1. The Fourth Amendment states:

 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

 U.S. Const. amend. IV.

2. Article I, § 8 provides:

 The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

 Pa. Const. art. I, § 8.

1161, 1163 (2001) (citation omitted); *see also Commonwealth v. Jackson*, 548 Pa. 484, 698 A.2d 571, 573 (1997) ("Pennsylvania has always followed *Terry* in stop and frisk cases...."); *Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226, 229–30 (1996) (evidence suppressed under Article I, § 8 because did not meet *Terry* requirements); *Commonwealth v. Morris*, 537 Pa. 417, 644 A.2d 721, 724 n. 3 (1994) (rejecting appellant's request to depart from *Terry* in interpreting Article I, § 8 and holding *Terry* and Article I, § 8 are commensurate). Therefore, as both constitutions provide equivalent protections for purposes of an investigative detention analysis, we need not analyze them separately in this instance.

While warrantless seizures such as a vehicle stop are generally prohibited, they are permissible if they fall within one of a few well-delineated exceptions. *Commonwealth v. Chase*, 599 Pa. 80, 960 A.2d 108, 112–13 (2008). One such exception allows police officers to detain individuals for a brief investigation when they possess reasonable suspicion that criminal activity is afoot. *Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884, 889 (2000); *Terry*, at 30, 88 S.Ct. 1868. Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to "specific and articulable facts" leading him to suspect criminal activity is afoot. *Melendez*, at 228 (citing *Terry*, at 21, 88 S.Ct. 1868). In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention. *Commonwealth v. Cook*, 558 Pa. 50, 735 A.2d 673, 676 (1999) (citations omitted).

Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability,

would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, when ... a credible informant warns of a specific impending crime— the subtleties of [the information coming from a source outside an officer's personal observation] should not thwart an appropriate police response.

*Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

 An anonymous tip, corroborated by independent police investigation, may exhibit sufficient indicia of reliability to supply reasonable suspicion for an investigatory stop. *Alabama v. White*, 496 U.S. 325, 331, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). However, we have recognized a known informant is far less likely to produce false information. *Jackson*, at 573–74 (citing *Adams*, at 146–47, 92 S.Ct. 1921). A known informant's tip may carry sufficient "indicia of reliability" to justify an investigative detention despite the fact that it may prove insufficient to support an arrest or search warrant. *Adams*, at 147, 92 S.Ct. 1921; *see also In the Interest of O.A.*, 552 Pa. 666, 717 A.2d 490, 496–97 (1998) (plurality) (evidence greater than mere use of confidential informant must be shown to presume informant is reliable for purposes of effecting warrantless arrest).

 The Commonwealth contends even the higher, more stringent standard of probable cause may be established from information provided by an informant with a record of providing accurate information in the past. *See Commonwealth v. Luv*, 557 Pa. 570, 735 A.2d 87, 90 (1999) (informant's tip may produce probable cause where police independently corroborate tip, or where informant has previously provided accurate information of criminal activity, or where informant himself engaged in illegal activity). The Commonwealth contends the officers corroborated a detailed tip provided by a known informant—a much more reliable source than an anonymous informant—and therefore clearly satisfied the reasonable suspicion standard.

Brown asserts the known informant in this case was no more reliable than an anonymous source, as no testimony established the informant's reliability, nor was the actual source of the information made known. Brown argues the tip did not constitute predictive, insider information, but could have been provided by anyone who had even minimal knowledge of Brown's affairs; thus, the information provided did not warrant the stop.

The constitutional test requires sufficient suspicion but, unlike the Superior Court's recitation, does not delineate specific details that must be listed like a recipe in order to give rise to that suspicion. *Cf. Brown,* at 1189. Listing an informant's history is one way to give credence to the information—a common way to be sure—but it is not the only way. Moreover, leaping to the conclusion that the information was never found to be reliable is not warranted. The record indicates the 13–year veteran police officer previously used the informant. Logically, if the information was "*not* ever found to be reliable," the officer would *not* have followed up on his information here. *Id.* The fact the officer did so bespeaks some measure of confidence in the information, not the contrary.

We also disagree with the Superior Court's determination that "any statement by the [history-less] informant must be considered akin to an anonymous tip, or at most a tip from a named citizen." *Id.* We are unaware of any authority supporting such a conclusion, and we decline to adopt it now. Fundamentally, the tip in this case was not anonymous, nor akin to anonymous, nor do we find any reason to equate anonymity with a known citizen. Informants remain, after all, known citizens; they are known citizens who have previously helped police. Simply because the officer did not delineate reasons to find the informant credible beyond a prior undetailed "usage" does not render the informant the legal equivalent of anonymous. If the information from an anonymous informant is false, no action against the informant is possible; however, providing false information will have consequences for a known informant such as this one, distinguishing the

presumptive quality of the information, and tipping the scales toward credibility, not away from it.

This is not statutory interpretation where the absence of an element creates a presumption that it is intentionally missing[3] —the totality of the circumstances is a measure of what is there, not what is inferred to be absent. *See Commonwealth v. Torres,* 564 Pa. 86, 764 A.2d 532, 537 (2001) ("[T]he totality of the circumstances test 'permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip.'") (citation omitted).

In *White,* a truly anonymous tip provided detail much like that provided in this case, and was found to provide sufficient indicia of reliability to warrant an investigative detention. An anonymous tip revealed White would be leaving an apartment building at a particular time in a specific vehicle and would be going to a motel carrying cocaine inside a brown attaché case. Police proceeded to the named apartment complex and saw White leave the apartment, carrying nothing in her hands, and enter the vehicle described by the anonymous informant. Police officers followed the vehicle, stopping it as it neared the motel named by the informant. In the car, officers found a brown attaché case containing marijuana and three milligrams of cocaine in White's purse. *White,* at 327, 110 S.Ct. 2412. The United States Supreme Court held, under the totality of the circumstances, the corroborated, anonymous tip provided adequate indicia of reliability to substantiate the investigatory detention. *Id.,* at 332, 110 S.Ct. 2412.

With the exception of the type of informant, *White* and the instant case are factually indistinct. Here, Officer McDonnell was alerted by a known informant that Brown would be going to a particular area, around a particular time, in a specific make of vehicle, and would be dealing prescription drugs. Officer McDonnell, like the officers in *White,* did not act on the tip without first independently corroborating the

---

**3.** 1 Pa.C.S. § 1921(a)–(b); *see also Kmonk–Sullivan v. State Farm Mutual Automobile Insurance Company,* 567 Pa. 514, 788 A.2d 955, 962 (2001).

details. *Id.*, at 327, 110 S.Ct. 2412. If the High Court found sufficient indicia of reliability in *White*—a factually equivalent case involving a less-reliable, anonymous informant—it logically follows the information provided by the known, but history-less, informant as corroborated by police investigation would provide sufficient reasonable suspicion warranting the stop here. The better practice of course would include information such as that described by the Superior Court. However, the absence of that laundry list does not absolve the need for a constitutional totality of the circumstances analysis.

We reject Brown's contention that police lacked reasonable suspicion because the information provided by the informant did not provide any insider information, but rather constituted mere description, which could have been provided by anyone who remotely knew him. This argument is a red herring. It matters not how many people knew he would be peddling pills as described. The question involves credibility of the one person who called police. The informant in this case was not anonymous, and the tip consisted of more than mere description. The informant provided police with information regarding imminent criminal activity committed by a specific person at a particular time and place. These facts, provided by a source known to police and corroborated through police investigation certainly gave rise to reasonable suspicion sufficient to warrant an investigative detention.

Accordingly, considering the totality of the circumstances, we find the Superior Court erred in determining police lacked reasonable suspicion to stop Brown's vehicle based upon the information provided by the known, but history-less, confidential informant. The totality of the circumstances standard remains the governing standard for the reasonable suspicion analysis and demands an objective consideration of all factors attending a tip provided by a police informant—anonymous or not.

The order of the Superior Court is reversed.

Jurisdiction relinquished.

Justice GREENSPAN did not participate in the decision of this case.

Chief Justice CASTILLE and Justices TODD and McCAFFERY join the opinion.

Justices SAYLOR and BAER concur in the result.