IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 69 MAP 2019 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court at No. 1091 MDA |
| | : | 2018 dated March 7, 2019 Affirming |
| v. | : | in Part and Reversing in Part the |
| | : | Order of the Franklin County Court |
| | : | of Common Pleas, Criminal |
| BETH ANN MASON, | : | Division, at No. CP-28-CR-0002352- |
| | : | 2017 dated June 26, 2018. |
| Appellee | : | |
| | : | ARGUED:  May 19, 2020 |

**OPINION**

**JUSTICE BAER**                               **DECIDED:  March 25, 2021**

In this appeal, we address the admissibility of audio evidence in a criminal trial under the Wiretapping and Electronic Surveillance Act ("Wiretap Act"), 18 Pa.C.S. §§ 5701-5782.   More specifically, we examine whether the Wiretap Act deems inadmissible a covertly obtained audio recording of Appellee Beth Ann Mason ("Appellee") while she worked as a nanny in the home of the family that employed her. Because Appellee failed to demonstrate that she possessed a justifiable expectation that her oral communications would not be subject to interception by a recording device located in the children's bedrooms, we hold that the Wiretap Act does not preclude the Commonwealth from introducing these recordings as evidence at Appellee's trial for allegedly abusing the children in her care.  Consequently, for the reasons that follow, we, in relevant part, reverse the Superior Court's judgment, which held that the trial court

properly suppressed the subject audio recording. In addition, we remand the matter to the trial court for further proceedings.

In April of 2017, Eric Valle ("Valle") hired Appellee to act as a nanny for his children and, in doing so, prohibited her from using corporal punishment on the children.[1] Approximately one month after Appellee commenced working for Valle, Valle's three-year-old son reported that Appellee was "thumbing" him in the face and hitting his twin two-year-old sisters. Around that same time, Valle observed that one of the twins had a "busted lip" and that his son occasionally had marks on his face.

Valle asked Appellee about his daughter's injured lip, and Appellee initially could not offer an explanation. The following day, however, she suggested that the child may have injured herself while attempting to climb out of her playpen. Valle was skeptical of this possibility given that his daughter suffered no other injuries that would indicate that she fell from her playpen. Of further note, Appellee told Valle that she did not know why his son would claim that she was "thumbing" his face or that she was striking the twins.

Additionally, after Appellee began to care for the children, Valle noticed a shift in their behavior. For example, if Valle raised his voice, his daughter would cover her face, a behavior that she did not exhibit prior to Appellee's employment with the family. Indeed, it appeared to Valle that his children were afraid of Appellee.

Approximately two months after Valle's son reported these incidents to him and Valle confronted Appellee, Valle placed a camera in his children's bedroom. The camera captured sound and video of its surroundings. Valle purposely did not inform Appellee of the presence of the camera. At some point, the camera recorded Appellee yelling at one child before forcefully placing her into a crib located inside of the bedroom where the

---

[1] We glean the facts underlying this matter from the opinion that the trial court authored in support of its order regarding Appellee's pre-trial motion to suppress evidence. Trial Court Opinion, 6/26/2018.

camera was recording. Audio portions of the recording also suggest that Appellee may have struck the child several times. Valle gave the recording to the police.

The Commonwealth subsequently charged Appellee with aggravated assault, simple assault, and endangering the welfare of children. In response to Appellee's habeas corpus motion, the trial court dismissed the aggravated assault charge due to a lack of sufficient evidence to support it. Appellee then filed an omnibus pretrial motion, which included a motion to suppress the audio and video recordings captured by the previously mentioned camera.

In her motion to suppress, Appellee asserted that the Commonwealth's primary evidence against her consisted of the audio and video recordings taken from Valle's hidden camera. Tellingly, throughout her motion to suppress, Appellee referred to this camera as a "nanny cam," a reference we adopt moving forward in this opinion. *See*, *e.g.*, Appellee's Pre-Trial Omnibus Motion, 4/16/2018, at ¶6 ("The underlying evidentiary basis for the charges is primarily a secretive audio and video recording from a hidden camera commonly referred to as a 'nanny cam.'"). Appellee suggested that the recordings from the nanny cam violate Section 5703 of the Wiretap Act, 18 Pa.C.S. § 5703,[2] and, thus, would be inadmissible at Appellee's trial because Valle illegally

---

[2] Section 5703 states, in full, as follows:

> Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:
>
> (1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication;
>
> (2) intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or

intercepted her electronic and oral communications, as the Wiretap Act defines those terms.[3] Appellee explained that, while the Wiretap Act contains a number of exceptions that allow a party to record secretly another person, none of those exceptions applies to the recordings at issue in this case. Thus, Appellee asked the trial court to suppress the recordings and make them unavailable as evidence at her trial.

The Commonwealth filed an answer to Appellee's omnibus motion. Therein, the Commonwealth contended that the recordings were admissible pursuant to the exception found at Subsection 5704(17) of the Wiretap Act, which states as follows:

> It shall not be unlawful and no prior court approval shall be required under this chapter for[ . . . a]ny victim, witness or private detective licensed under the act of August 21, 1953 (P.L. 1273, No. 361), known as The Private Detective Act of 1953, to intercept the contents of any wire, electronic or oral communication, if that person is under a reasonable suspicion that the intercepted party is committing, about to commit or has committed a crime of violence and there is reason to believe that evidence of the crime of violence may be obtained from the interception.

18 Pa.C.S. § 5704(17) (footnote omitted). In this regard, the Commonwealth explained that, when Valle began using the nanny cam, he had reasonable suspicion that Appellee was subjecting his children to a crime of violence and that he believed that the nanny cam would intercept evidence of that crime.

The trial court subsequently held an evidentiary hearing to address, *inter alia*, Appellee's motion to suppress the recordings. At that hearing, Valle was the Commonwealth's sole witness, and he testified in a manner consistent with the facts as stated above. Appellee briefly testified in support of her motion to suppress by providing

---

> (3) intentionally uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication.

18 Pa.C.S. § 5703.

[3] We provide the relevant statutory definitions *infra*.

her version of the conversation that occurred between her and Valle regarding the lip injury suffered by Valle's daughter. N.T., 5/24/2018, at 24-25. On June 26, 2018, the court entered an order that, in pertinent part, granted Appellee's motion to suppress and excluded from trial both the audio and video recordings captured by the nanny cam. The court authored an opinion in support of its decision.

With due respect, the reasoning provided by the trial court largely is irrelevant to the current appeal. We nonetheless observe that, in its opinion, the court began its analysis by explaining that, for the Commonwealth to prove by a preponderance of the evidence that the exception found at 18 Pa.C.S. § 5704(17) applies to the recordings in question, Valle had to have reasonable suspicion that Appellee was committing, about to commit, or had committed a "crime of violence," as that term is defined in the Wiretap Act. Trial Court Opinion, 6/26/2018, at 7. At the suppression hearing, the Commonwealth contended that when Valle began using the nanny cam, he had reasonable suspicion that Appellee was committing aggravated assault against his children.[4] Id. at 7-8.

In response to that argument, the trial court highlighted that the only types of aggravated assault included in the Wiretap Act's definition of "crime of violence" can be found at 18 Pa.C.S. §§ 2702(a)(1) and (2).[5] Id. at 8. As the court observed, pursuant to Subsection 2702(a)(1) of the Crimes Code, a person is guilty of aggravated assault if she "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting an extreme indifference to the

---

[4] The Wiretap Act's definition of "crime of violence," which can be found at 18 Pa.C.S. § 5702, is fairly extensive; thus, we will not include the full definition here. For purposes of this appeal, it is sufficient to note that the definition of "crime of violence" lists a number of criminal offenses, and aggravated assault is the only crime in that list with any pertinence to this matter.

[5] The crime of aggravated assault found at 18 Pa.C.S. § 2702(a)(2) is irrelevant to this matter as it criminalizes the aggravated assault of police officers and other similarly employed people.

value of human life." 18 Pa.C.S. § 2702(a)(1). The court further emphasized that the Crimes Code defines "Serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2602.

After briefly reiterating the circumstances presented at the suppression hearing, the trial court concluded that the Commonwealth failed to establish that, prior to utilizing the nanny cam, Valle had reasonable suspicion that Appellee was committing, about to commit, or had committed aggravated assault as defined by 18 Pa.C.S. § 2702(a)(1) because the Commonwealth did not present any evidence that Appellee caused or attempted to cause serious bodily injury to the Valle children. *Id.* at 9-11. In other words, the court concluded that the Commonwealth failed to prove by a preponderance of the evidence that the recordings at issue fit the Wiretap Act exception found at 18 Pa.C.S. § 5704(17).

Next, the trial court noted that, during oral argument regarding Appellee's motion to suppress, the Commonwealth proposed that, if the court were to exclude Appellee's recorded verbal statements from evidence, the court nonetheless could admit the portion of the audio recording that contained "hitting sounds" because, in the Commonwealth's view, "hitting sounds" do not fall under the Wiretap Act's definition of "oral communication."[6] *Id.* at 11. Although the court agreed with the Commonwealth that the

---

[6] The Wiretap Act defines "oral communication," in full, as follows:

> Any oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation. The term does not include the following:
>
> (1) An electronic communication.
>
> (2) A communication made in the presence of a law enforcement officer on official duty who is in uniform or otherwise clearly identifiable as a law enforcement officer and who is using an electronic, mechanical or other device which has been approved under section

sound of hitting does not fall within the definition of "oral communication," the court nonetheless concluded that the Commonwealth's argument failed. In this regard, the court explained that the remedy afforded to Appellee by the Wiretap Act is "to exclude the 'contents' of any wire, electronic, or oral communication, or evidence derived therefrom." *Id.* (referring to 18 Pa.C.S. § 5721.1(b)).[7] The court then noted that the Wiretap Act defines "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 Pa.C.S. § 5702.

The trial court suggested that "[i]t would [be] difficult, if not impossible, for the Commonwealth to utilize the recording of 'hitting' alone in this matter, without revealing information concerning the substance, purport, or meaning of the excluded oral

---

5706(b)(4) (relating to exceptions to prohibitions in possession, sale, distribution, manufacture or advertisement of electronic, mechanical or other devices) to intercept the communication in the course of law enforcement duties. As used in this paragraph only, "law enforcement officer" means a member of the Pennsylvania State Police, an individual employed as a police officer who holds a current certificate under 53 Pa.C.S. Ch. 21 Subch. D (relating to municipal police education and training), a sheriff or a deputy sheriff.

18 Pa.C.S. § 5702 (footnote omitted).

[7] Subsection 5721.1(b)(1) states:

**(b) Motion to exclude.--**Any aggrieved person who is a party to any proceeding in any court, board or agency of this Commonwealth may move to exclude the contents of any wire, electronic or oral communication, or evidence derived therefrom, on any of the following grounds:

(1) Unless intercepted pursuant to an exception set forth in section 5704 (relating to exceptions to prohibition of interception and disclosure of communications), the interception was made without prior procurement of an order of authorization under section 5712 (relating to issuance of order and effect) or an order of approval under section 5713(a) (relating to emergency situations) or 5713.1(b) (relating to emergency hostage and barricade situations).

18 Pa.C.S. § 5721.1.

communications." *Id.* at 12. Thus, the court opined, because it is obligated to construe strictly the Wiretap Act and to vindicate fully the privacy interests protected by the Act, it was required to exclude the entire recording, which it deemed to constitute an illegally intercepted oral communication (Appellee's utterances) coupled with evidence derived therefrom (the sound produced when Appellee allegedly hit the child).

The Commonwealth subsequently filed a notice of appeal, certifying that "the order appealed from will terminate or substantially handicap the prosecution." Notice of Appeal, 6/29/2020; *see* Pa.R.A.P. 311(d) (allowing the Commonwealth to appeal as of right "from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution").

In an unpublished memorandum, a splintered three-judge panel of the Superior Court affirmed in part and reversed in part the trial court's suppression order.[8] *Commonwealth v. Mason*, 215 A.3d 627 (Pa. Super. 2019) (table) (unpublished memorandum). According to the lead opinion, the relevant question before the court was "whether and to what extent the audio and video recordings of [Appellee] are excludable under the Wiretap Act." Lead Opinion at 5 (footnote omitted). The lead opinion then explained that, under the Wiretap Act, "no person shall disclose the contents of any wire, electronic or oral communication, or evidence derived therefrom, in any proceeding in any court, board or agency of this Commonwealth." *Id.* at 5-6 (quoting 18 Pa.C.S. § 5721.1(a) (footnote omitted)). The lead opinion further noted, *inter alia*, that pursuant to the Wiretap Act: (1) "[a]ny aggrieved party in a court proceeding may move to exclude the contents of any wire, electronic or oral communication, or evidence derived therefrom[,]" 18 Pa.C.S. § 5721.1(b); (2) an "oral communication" is "uttered by a person possessing an

_____

[8] One judge authored a memorandum affirming in part and reversing in part the trial court's order ("lead opinion"), and the second judge joined only the result reached by that memorandum. As detailed below, the third judge authored a stand-alone concurring and dissenting memorandum.

expectation that such communication is not subject to interception under circumstances justifying such expectation[,]" 18 Pa.C.S. § 5702; and (3) "intercept" is defined in pertinent part as "aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device," *id.* Lead Opinion at 5-6.

The lead opinion began its substantive analysis by concluding that, pursuant to the plain language of the Wiretap Act, Appellee's verbal utterances captured by the nanny cam, *i.e.*, Appellee yelling at the Valle child, are "oral communications" which were "intercepted" by the nanny cam. *Id.* at 6. Thus, the lead opinion reasoned, "[w]ithout judicial authorization or an applicable exception, the communications are subject to exclusion under the Wiretap Act." *Id.* at 6-7 (citing 18 Pa.C.S. § 5721.1(b)). In passing, the lead opinion then determined that the "hitting noises" captured by the nanny cam are also inadmissible at Appellee's trial. In so doing, the lead opinion observed that "the Wiretap Act provides that if an oral communication is rendered inadmissible, then so is the 'evidence derived therefrom.'" *Id.* (quoting 18 Pa.C.S. § 5721.1(b)). Consistent with the trial court, the lead opinion concluded that the hitting noises constituted evidence derived from Appellee's oral communication and, thus, are inadmissible at her trial. *Id.*

Most important to the appeal currently before this Court, the lead opinion subsequently addressed the Commonwealth's contentions that: (1) the Wiretap Act protects only oral communications made when the speaker has "an expectation that such communication is not subject to interception under circumstances justifying such expectation," *id.* at 8 (quoting 18 Pa.C.S. § 5702); and (2) the Wiretap Act does not protect Appellee's oral communications because she did not have a justifiable expectation that her utterances would not be recorded in Valle's children's bedroom.[9] In this regard, the

_____

[9] The Superior Court and the parties interchangeably utilize the Wiretap Act's concept of a person's justifiable expectation that her utterances will not be intercepted with the

lead opinion observed that, pursuant to the Wiretap Act, "courts apply an objective standard when assessing the reasonableness of an expectation of non-interception." *Id.* (citing *Agnew v. Dupler*, 717 A.2d 519, 523 (Pa. 1998)).

Noting that the nanny cam secretly recorded Appellee inside of the Valle children's bedroom while Appellee was working in her capacity as a nanny for Valle, the lead opinion asserted that the record demonstrated that Appellee objectively had no reason to believe that her communications would be intercepted. *Id.* at 8-9 (recognizing that various courts have held that an employee has a reasonable expectation of privacy in certain areas of her workplace and that an overnight guest has an expectation of privacy while in the host's home). More specifically, the lead opinion declared that, based upon Appellee's status as an employee and regular guest in Valle's home, "she had a justified expectation that she would not be audio recorded." *Id.* at 9.

---

federal Fourth Amendment constitutional concept of a person's reasonable expectation of privacy. They do so, in part, because of this Court's holding in *Agnew v. Dupler*, 717 A.2d 519, 523 (Pa. 1998), which explained that

> [i]n determining whether the expectation of non-interception was justified under the circumstances of a particular case, it is necessary for a reviewing court to examine the expectation in accordance with the principles surrounding the right to privacy, for one cannot have an expectation of non-interception absent a finding of a reasonable expectation of privacy.

In her dissenting opinion, Justice Donohue states her belief that case law such as *Agnew* dictates that, because Appellant allegedly had a reasonable expectation of privacy in the Valle children's bedroom, she necessarily had a justifiable expectation that her utterances would not be intercepted while she was in that room. Justice Wecht, on the other hand, dissents, in part, on the basis that *Agnew* should be overruled because that decision inappropriately married Fourth Amendment concepts to the statutorily-driven requirements of the Wiretap Act.

Notably, the parties to this appeal do not discuss the propriety of this overlap in the law or advocate that the Court take the substantial step of overruling *Agnew* and its progeny. As our discussion below highlights, the issues presented in this appeal require the Court to interpret the Wiretap Act, and we restrict our analysis to that task. While we may wish to revisit the continued validity of *Agnew* in the appropriate case where advocacy on the issue is squarely before the Court, applying the doctrine of judicial restraint, we decline to raise and address that issue *sua sponte* today.

The lead opinion next addressed the Commonwealth's position that the audio recordings are admissible pursuant to the Wiretap's Act's "crime exception," found at 18 Pa.C.S. § 5704(17), as discussed *supra*. *Id.* at 10. The lead opinion ultimately agreed with the trial court's determination that the Commonwealth failed to meet its burden of proof under this subsection, concluding that the facts of record were "insufficient to show that Valle had a reasonable basis to think that recording [Appellee] would produce evidence of the type of aggravated assault necessary to satisfy the Wiretap Act's crime exception." *Id.* at 12 (footnote omitted).

Lastly, the lead opinion discussed the admissibility of the video portion of the nanny cam recordings, which the trial court ruled were inadmissible pursuant to the Wiretap Act. We need not detail this portion of the lead opinion because it is irrelevant to the instant appeal. It is sufficient to note that the lead opinion concluded that the Wiretap Act does not prohibit the admission at trial of the video portion of the nanny cam recording, an issue that is not currently before this Court. For these reasons, the lead opinion affirmed in part and reversed in part the trial court's order. Judge Murray concurred only in the result reached by the lead opinion. President Judge Panella authored a concurring and dissenting memorandum.

Judge Panella concurred with, *inter alia*, the lead opinion's conclusion that the video portion of the recording is admissible at Appellee's trial. Concurring and Dissenting Memorandum at 1. However, contrary to the lead opinion, Judge Panella first concluded that the audio portion of the nanny cam recording is admissible under the Wiretap Act's "crime exception." *Id.* Judge Panella was of the view that the Commonwealth sufficiently demonstrated that Valle had reasonable suspicion that Appellee was committing or would commit aggravated assault against the Valle children, "based on the unexplained bruising, 'thumbing,' split lip, and other injuries to his children while in the charge of Appellee[.]" *Id.* at 3. In this regard, Judge Panella highlighted that Appellee allegedly

committed these dangerous acts on small children who are susceptible to being seriously injured by the types of assaults alleged in this case. *Id.*

In the alternative and, again, most significant to the appeal currently before this Court, Judge Panella determined that Appellee had no reasonable expectation of privacy in the children's bedroom within Valle's home where Valle placed the nanny cam. Relying upon principles of criminal law, Judge Panella reasoned that Appellee bore the burden of proving that she had a subjective or actual expectation of privacy while in the Valle children's bedroom and that this subjective expectation is one which society is willing to recognize as reasonable. *Id.* (citing *Commonwealth v. Cruz*, 166 A.3d 1249, 1255 (Pa. Super. 2017)).[10] According to Judge Panella, Appellee failed to meet her burden in this regard. Indeed, Judge Panella explained that he was "not prepared to hold that any adult, outside of their own home, has a reasonable expectation of privacy in an area where young children are sleeping." *Id.* at 5.

Lastly, Judge Panella stated that, assuming *arguendo* that Appellee established that she had a reasonable expectation of privacy in the children's bedroom, he nonetheless would find that the sounds of Appellee allegedly slapping the children are admissible under the Wiretap Act. Judge Panella opined that these sounds are not "oral communications," as defined in the Wiretap Act, and that they are not evidence derived from oral communications. As to the latter point, Judge Panella asserted that the sounds "are simply the consequences of non-verbal actions taken by either [Appellee] or the

---

[10] In a footnote, Judge Panella explained that he was unable to locate legal authority "explicitly addressing the issue of which party bears the burden of proof of establishing this condition of the Wiretap Act's ban on recording oral communications." Concurring and Dissenting Memorandum at 4 n.2. Judge Panella further noted that the authority that he did find "assumes this burden rests with [the] party asserting the expectation of non-interception based upon the analysis used to determine whether a person has a reasonable expectation of privacy under the Fourth Amendment." *Id.* (citing, as an example, *Commonwealth v. Prisk*, 13 A.3d 526, 531 (Pa. Super. 2011)).

children." *Id.* at 5-6. Thus, in his view, the admission of these sounds into evidence would not tend to disclose the content of any oral communication from Appellee. *Id.* at 6.

The Commonwealth filed a petition for allowance of appeal, which we granted, limited to the following issues, as phrased by the Commonwealth:

(1) Whether a babysitter has a reasonable expectation of privacy in the bedroom of a child she is caring for?

(2) Whether the sounds resulting from a child being forcibly thrown into a crib and being beaten by [Appellee] constitute "oral communications" or "evidence derived therefrom" under the Pennsylvania wiretap statute?

*Commonwealth v. Mason*, 217 A.3d 802, 803 (Pa. 2019) (*per curiam*).

Concerning the first issue, the Commonwealth advocates that a babysitter or nanny does not have a reasonable expectation of privacy in the bedroom of the children in her care. In support of this argument, the Commonwealth initially contends that the lower courts erred in concluding that the recording in question meets the Wiretap Act's definition of "oral communication." More specifically, the Commonwealth asserts that Appellee "did not possess an expectation that her communication to the child was not subject to interception." Commonwealth's Brief at 13. In support of this position, the Commonwealth posits that this Court routinely has "held that the burden of proving a reasonable expectation of privacy is on the defendant as she is the one that must assert it." *Id.* (quoting *Commonwealth v. Enimpah*, 106 A.3d 695, 698 (Pa. 2014), for the proposition that, to establish standing to suppress evidence in a criminal trial, "a defendant must show that he had a privacy interest in the place invaded or thing seized that society is prepared to recognize as reasonable"). The Commonwealth highlights that, at the suppression hearing, Appellee testified but never stated that she had a subjective expectation of privacy inside of the children's bedroom. According to the Commonwealth, Appellee's "lack of testimony that she held a subjective expectation of

privacy in the bedroom of her employer's home is fatal to her claim that a [Wiretap Act] violation occurred." *Id.* at 14.

The Commonwealth further suggests that, even if Appellee did have a subjective expectation that her communications would not be intercepted inside of the bedroom, that expectation was not justifiable nor reasonable. In this regard, the Commonwealth focuses on this Court's precedent which holds that, "[i]n determining whether the expectation of non-interception was justified under the circumstances of a particular case, it is necessary for a reviewing court to examine the expectation in accordance with the principles surrounding the right to privacy, for one cannot have an expectation of non-interception absent a finding of a reasonable expectation of privacy." Commonwealth's Brief at 16-17 (quoting *Pennsylvania State Police v. Grove*, 161 A.3d 877, 901 (Pa. 2017)). The Commonwealth concedes that employees have a recognized level of privacy in their workplace but nonetheless insists that this Court "should not be ready to recognize that anyone, other than a parent, has a privacy interest in the sleeping area of a child." *Id.* at 17.

In response, Appellee agrees that "[p]ossession of a reasonable expectation of privacy is an essential element of the term 'oral communication[.]'" Appellee's Brief at 4. Initially, Appellee contends that a determination of whether she had a reasonable expectation of privacy is based on an objective standard. *Id.* at 5. However, she later states that "it does seem that the necessary analysis may not be entirely based on objectivity." *Id.* at 6. Instead, she suggests, "[i]t is required that the aggrieved party 'exhibits an actual or subjective expectation of privacy.'" *Id.* (quoting *Commonwealth v. Moore*, 928 A.2d 1092, 1101 (Pa. Super. 2007)). Regardless of the appropriate test, Appellee avers that she had a reasonable expectation of privacy when she was working as a nanny in the Valle home.

In support of this position, Appellee proposes that, if she had been using corporal punishment on or shouting at the Valle children, she would have been knowingly disregarding a stated rule of her employment, *i.e.*, Valle's instruction that she was not to discipline the children physically or by yelling at them. *Id.* Thus, Appellee claims, "[i]t is reasonable to conclude that she would not have done so unless she felt as though it was being done in private and without risk to her job." *Id.* Appellee further reasons that common sense would dictate that, absent notice of the nanny cam, one can assume that she expected privacy in the home of a family that entrusted her to care for their young children. *Id.* at 8.

In closing, Appellee rejects the Commonwealth's argument that, to establish that she had an expectation of privacy while in the Valle children's bedroom, she was required to testify explicitly to that fact at the suppression hearing. Appellee takes the position that there simply is no legal authority to support that proposition. *Id.* at 9. Moreover, she agrees with the lead opinion in the Superior Court that her status as an employee and guest of the Valle family cements the fact that she reasonably expected not to be recorded while acting as a nanny in the Valle residence.[11] *Id.* at 9-10.

We begin our analysis by noting the well-settled principles that guide our review of suppression orders. When, as here, we consider the propriety of a trial court's order granting a motion to suppress, "we may consider only the evidence from the appellee's witnesses along with the Commonwealth's evidence which remains uncontroverted." *Commonwealth v. Brown*, 996 A.2d 473, 476 (Pa. 2010). Our standard of review is restricted to establishing whether the suppression record supports the trial court's factual

---

[11] The suppression record demonstrates that, at some point, Appellee discovered the nanny cam. The parties disagree about when Appellee learned that she was being secretly recorded. However, consistent with Appellee's position, the record fails to clarify whether Appellee discovered the nanny cam before or after the recordings at issue here were captured. Thus, the fact that Appellee discovered the nanny cam at some point has no bearing on the disposition of this appeal.

findings; "however, we maintain *de novo* review over the suppression court's legal conclusions." *Id.*

We further observe that our primary task in this appeal is to interpret the Wiretap Act. That task is guided by the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991. Pursuant to the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General Assembly's intention. 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b).

As this Court recently reiterated, "[i]n general, the Wiretap Act prohibits the interception, disclosure or use of any wire, electronic or oral communication." *Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020) (citation and internal quotation marks omitted). Here, we are concerned with whether the Wiretap Act bars the Commonwealth from presenting at Appellee's criminal trial her "oral communication" intercepted by Valle's nanny cam, *i.e.*, the audio recordings captured by the nanny cam. Appellee would have us hold that her status as an in-home nanny, as a matter of law, entitled her to a justified expectation that her oral communications would not be intercepted while she was in the Valle children's bedroom. For the reasons that follow, we respectfully reject this position.

If a criminal defendant, such as Appellee, believes that evidence in the form of an "oral communication" was intercepted in violation of the Wiretap Act, the Act permits her to make such a claim in a "motion to exclude." 18 Pa.C.S. § 5721.1(b). As noted throughout this opinion, the Wiretap Act provides the following base definition of "oral communication:" "Any oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 Pa.C.S. § 5702.

Contrary to Appellee's position and in support of the Commonwealth's interpretation of the Wiretap Act, this Court has held that, to establish a violation of the Wiretap Act, the claimant carries the burden to demonstrate, *inter alia*, that she possessed an expectation that the communication would not be intercepted and that her expectation was justifiable under the circumstances. *See Agnew*, 717 A.2d at 522 (explaining that "to establish a *prima facie* case under the Wiretap Act for interception of an oral communication, a claimant must demonstrate: (1) that he engaged in a communication; (2) that he possessed an expectation that the communication would not be intercepted; (3) that his expectation was justifiable under the circumstances; and (4) that the defendant attempted to, or successfully intercepted the communication, or encouraged another to do so"); *see also Grove*, 161 A.3d at 901-02 (citing *Agnew, supra*, for the proposition that a "claimant alleging [a] Wiretap Act violation must show[,]" *inter alia*, "that he possessed an expectation that the communication would not be intercepted [and] that his expectation was justifiable under the circumstances"). Placing this burden on defendants is consistent with the plain language of the Wiretap Act and comports with common sense, as the Commonwealth would have no incentive to demonstrate that a defendant has a justifiable expectation that her oral communication would not be intercepted, and the Wiretap Act does not require the Commonwealth or any other party to prove a negative, *i.e.*, that the claimant did not have a justified expectation that her oral communication would not be intercepted under the circumstances of the case.

Thus, for Appellee's motion to exclude to succeed, she carried the burden of presenting evidence to establish that, under the circumstances of this case, she possessed a justifiable expectation that the oral communications, which were captured by the nanny cam in the Valle children's bedroom, would not be intercepted. Appellee failed to meet this burden. Indeed, the only evidence Appellee submitted at the suppression hearing was her brief testimony recounting her version of the conversation

that took place between her and Valle regarding the lip injury suffered by one of Valle's daughters. N.T., 5/24/2018, at 24-25. Appellee's testimony is woefully insufficient to demonstrate that she had a justifiable expectation that her oral communications would not be intercepted under the circumstances presented in this case.[12]

Further, absent demonstrable circumstances to the contrary, we believe it is objectively reasonable to conclude that persons in Appellee's position do not have a justifiable expectation that their oral communications will not be subject to interception while they are in a child's bedroom. Notably, the use of recording devices in homes as a means for parents to monitor people hired to care for their children have become so commonplace that these devices are often referred to as "nanny cams." That is to say that the expectation that a childcare worker is going to be recorded in their employer's home is so ubiquitous in our society that we have a name for it. Indeed, as observed above, Appellee used this term throughout her motion to suppress to describe the recording device used by Valle. *See, e.g.,* Appellee's Pre-Trial Omnibus Motion, 4/16/2018, at ¶6 ("The underlying evidentiary basis for the charges is primarily a secretive audio and video recording from a hidden camera commonly referred to as a 'nanny cam.'").

For these reasons, we hold that: (1) Appellee failed to establish that the audio recordings captured by Valle's nanny cam constitute an "oral communication" as defined by the Wiretap Act, insomuch as Appellee did not demonstrate that she had a justifiable expectation that her oral communications would not be intercepted by a device located in the Valle children's bedroom, *see* 18 Pa.C.S. § 5702 (defining "oral communication" as "Any oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such

---

[12] To allay the concern Appellee expressed in her brief, she could have met this burden with any admissible evidence, not just through her testimony.

expectation."); and (2) a nanny does not have a justifiable expectation that her oral communications will not be intercepted in the bedroom of a child in her care simply because the nanny is an employee and guest of the homeowner.[13]  Because the Superior Court reached a contrary result, we reverse the portion of that court's judgment which affirmed the trial court's suppression order.  We further remand this matter for proceedings consistent with this opinion.

Chief Justice Saylor and Justices Todd and Mundy join the opinion.

Justice Dougherty files a concurring opinion.

Justices Donohue and Wecht file dissenting opinions.

---

[13] These holdings render the Commonwealth's second issue moot.