J-S01030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| OSCAR CHRISTOPHER JACKSON | : | |
| | : | |
| Appellant | : | No. 345 WDA 2022 |

Appeal from the Judgment of Sentence Entered February 28, 2022,
in the Court of Common Pleas of Fayette County,
Criminal Division at No(s): CP-26-CR-0000821-2020.

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED: MARCH 10, 2023**

Oscar Christopher Jackson appeals from the judgment of sentence entered following his convictions for possession of firearm prohibited, possession with intent to deliver heroin, possession of a controlled substance, and use or possession of drug paraphernalia.[1] He challenges the denial of his motion to suppress evidence. Additionally, Jackson has filed with this Court a request to remand so that he may proceed *pro se* in this appeal. We deny Jackson's request and affirm his judgment of sentence.

On December 23, 2019, Pennsylvania State Police Trooper Kristopher Williams filed a criminal complaint charging Jackson with the above offenses. The charges were held for court. On February 22, 2021, Jackson filed a motion

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6105(a)(1) and 35 P.S. § 780-113(a)(30), (16), and (32).

to suppress evidence. The suppression court heard Jackson's motion on April 12, 2021, in Jackson's absence. The Commonwealth presented the testimony of Trooper Williams.

The suppression court made the following factual findings:

> On December 21st, 2019 at 1:48 pm Troopers Williams, Sifontes-Lavine, and Wright received a message from their dispatcher that an individual staying in Room 309 of the Super 8 Hotel in Uniontown had called 911 and reported that 'two gunmen' were outside his hotel room door. Neither the affidavit of probable cause nor the testimony given at the [suppression hearing] established whether or not the complainant identified himself by name. [The Troopers] then walked up a staircase to the third floor and began walking down the third floor hallway, with their weapons drawn. Trooper Williams testified that there were no gunmen in the hallway. They arrived at Room 309 and knocked on the door. Trooper Williams testified that they could hear someone inside. [The Troopers] announced that they were the police. Trooper Williams testified that the door opened slightly and that only the eyes of the individual on the other side of the door ([Jackson]) were visible. At this point, [The Troopers] had no way of knowing that the individual on the other side of the door was not one of the gunmen reported on the 911 call; nor could they have known that there were not gunmen in the room, behind [Jackson].
>
> Trooper Williams testified that [Jackson] acted suspiciously, spoke fast, and had a high heart rate. [The Troopers] commanded [Jackson] to show them his hands and come out of the room. [Jackson] neither showed his hands, nor came out of the room. [The Troopers] commanded [Jackson] to show them his hands and come out of the room again, multiple times. [Jackson] then slowly opened the door. [The Troopers] put him on the ground and handcuffed him. Trooper Williams testified that he considered [Jackson] "detained" at that time. The Troopers entered Room 309 and cleared it. In the process of clearing the room, the troopers observed a glass smoking device and a butane lighter on a night stand. Trooper Williams testified that he observed a white residue on the inside of the glass smoking device which he believed to be indicative of methamphetamine. No 'gunmen' nor any other individuals were found in the room. [Trooper Williams

explained how he had observed methamphetamine users make "wild accusations" that people are out to kill them.]

[Jackson] was arrested, verbally Mirandized, and searched. The search of [Jackson] yielded a plastic baggie containing methamphetamine. [Jackson] was taken to the Pennsylvania State Police Uniontown Barracks. Trooper Williams testified that, by that time, [Jackson] no longer exhibited symptoms of being under the influence of methamphetamine. [Jackson] was taken to an interview room and verbally Mirandized again. . . . [Jackson] told Trooper Williams and Corporal Duvall that Room 309 contained drugs, cash, and a firearm. A search warrant was obtained for Room 309. Meanwhile, [Jackson] asked to go to the bathroom. Corporal Duvall said that he had to accompany him. [Jackson] protested and acted suspiciously. [Jackson] was searched again and the search yielded three bricks of heroin and $1,355 in cash in [Jackson's] groin area. Meanwhile, the search warrant for Room 309 was executed. Room 309 was found to contain drugs, cash, a firearm, and drug paraphernalia.

Opinion and Order, 4/27/21, at 1–4 (paragraph breaks added).

The suppression court concluded that the Troopers' initial entry into Room 309 fell under the "public servant" exception to the search warrant requirement. The court rejected Jackson's theory that the second search of Room 309 occurred before the warrant was issued, finding an explainable error on the warrant:

Furthermore the [suppression court] is satisfied that the discrepancy between the time written on the Search Warrant and the time written on the Return of Service and Inventory is merely a mistake, most likely attributable to the confusion between "seven o'clock" and "seventeen hundred hours." The [suppression court] adds that Trooper Williams testified that such was the case.

*Id.* at 10; *see* N.T., 4/12/21, at 22–26. The court denied suppression.

The case proceeded to trial on December 6 and 7, 2021. The jury found Jackson guilty of the above offenses. On February 28, 2022, the trial court

sentenced Jackson to an aggregate term of 7½ to 15 years of imprisonment. Jackson timely appealed.[2] Jackson and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

While his appeal was pending, Jackson sent this Court a letter, received on July 14, 2022, asking to proceed *pro se*. Accordingly, we remanded Jackson's case to the trial court to hold a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998), to determine if Jackson wished to proceed *pro se* and had made a knowing, intelligent, and voluntary decision to do so. On August 15, 2022, the trial court conducted a ***Grazier*** hearing and found that Jackson did not want to proceed *pro se*. Therefore, the trial court ordered Jackson's attorney to continue to represent Jackson.

Jackson's case returned to this Court on August 22, 2022. His attorney filed a brief on October 28, 2022. Jackson then sent this Court another letter, dated December 21, 2022, where he is requesting another ***Grazier*** hearing, citing dissatisfaction with his attorney.

We first deny Jackson's request to remand for another ***Grazier*** hearing. "[W]hen an appellant requests *pro se* status after his counsel has filed an appellate brief, the request is untimely." ***Grazier***, 713 A.2d at 82 (citing ***Commonwealth v. Rogers***, 645 A.2d 223, 224 (Pa. 1994)). Here, Jackson's

---

[2] Jackson's notice of appeal lists both his sentence and the denial of his suppression motion. The appeal lies only from the judgment of sentence. ***Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001).

letter is dated nearly two months after his attorney filed the brief in this case.

Therefore, we deny Jackson's request.

We thus turn to Jackson's substantive claims. Jackson presents two issues on appeal:

> Whether the suppression court made a clearly erroneous finding of fact that the search warrant was obtained before the search of Room 309.

> Whether the suppression court erred as a matter of law by refusing to suppress the fruits of the illegal search which was performed without probable cause, and without applicable exception.

Jackson's Brief at 4 (capitalization omitted).[3]

Jackson's first claim pertains to the suppression court's factual finding that the second search of Room 309 occurred at 7:00 p.m. (1900 hours) rather than 5:00 p.m. (1700 hours). He notes that Trooper Williams wrote 1700 on the warrant, which was not issued until 6:30 p.m. Jackson's second claim presumes the success of his first: If, in fact, the warrant was executed before it was issued, then the police did not have probable cause and followed a constitutionally deficient process in obtaining the drugs and guns from the room.

Our review of a suppression order "is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions."

---

[3] The Commonwealth did not file a brief.

*Commonwealth v. Brown*, 996 A.2d 473, 476 (Pa. 2010) (citing *Commonwealth v. Snyder*, 963 A.2d 396, 400 (2009)).

Here, the suppression court found that the police executed the search warrant at 7:00 p.m. (1900 hours).  Opinion and Order, 4/27/21, at 10.  The record supports this finding.  N.T., 4/12/21, at 22–26.  As such, we will not reverse the suppression court's finding.

Because Jackson's first claim fails, so does his second.  According to Jackson's suppression motion, he told the police about the contraband in Room 309 at 5:40 p.m., and the warrant was issued at 6:30 p.m.  Because the police searched Room 309 at 7:00 p.m., the search was supported by probable cause and was conducted pursuant to a valid warrant.  Therefore, the suppression court did not err in denying Jackson's motion to suppress.

Request to remand for *Grazier* hearing denied.  Judgment of sentence affirmed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2023

- 6 -