J-S33013-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ERNESTO ALMODOVAR | : | |
| Appellant | : | No. 2462 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 23, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004094-2017

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ERNESTO ALMODOVAR | : | |
| Appellant | : | No. 2463 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 23, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004095-2017

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ERNESTO ALMODOVAR | : | |
| Appellant | : | No. 2464 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 23, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004096-2017

BEFORE: BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                              **FILED JANUARY 13, 2022**

Ernesto Almodovar appeals from his April 23, 2018 judgment of sentence of thirty-one to sixty-three years of incarceration followed by fourteen years of probation, which was entered after a jury found him guilty of three counts of attempted murder, three counts of aggravated assault, possessing a prohibited firearm, carrying a firearm without a license, and carrying a firearm in public in Philadelphia at docket numbers CP-51-CR-0004094-2017 ("Docket 4094"), CP-51-CR-0004095-2017 ("Docket 4095"), and CP-51-CR-0004096-2017 ("Docket 4096"). We affirm.

The trial court has aptly summarized the facts of this case, as follows:

> On August 30, 2016[,] around 6:30 p.m., Appellant indiscriminately fired twenty-three bullets into a crowded street, severely injuring three different victims. The victims included Rakeem Baker ("Mr. Baker"), Bartley Foster ("Mr. Foster"), and J.S., who was only twelve years old at the time.[5] The incident occurred near the intersection of N. Sheridan St. and W. Clearfield St. in Philadelphia, outside of La Dominicana Grocery at 625 Clearfield St. Witnesses testified that there were between forty and fifty people in the area when the shooting occurred.
>
> _____
>
> [5] Mr. Baker is [the complainant] under Docket 4094. Mr. Foster is the complainant under Docket 4095-2017. J.S. is the complainant under Docket 4096.
>
> J.S. testified that . . . she and her friend, Samira, went to La Dominicana Grocery to pick up a few items for Samira's mother. As the girls were exiting the store, they heard several gunshots. The girls and the store cashier rushed to the back of the store and hid until the shooting stopped. At some point, a bullet struck J.S. in the back of her right thigh, . . . . [B]efore she ran back into the store, [J.S.] had an unobstructed view of the shooter. . . . [She also] noticed a tattoo on the shooter's arm[.]

- 2 -

. . . .

[Mr. Baker] was shot in his left eye and suffered an exit wound on his neck. Mr. Foster sustained four bullet wounds, which broke the tibia and femur in his right leg and caused unspecified injuries in his left leg. . . . Both Mr. Baker and Mr. Foster stated that they did not see the individual who shot them.

[While examining the 600 block of W. Clearfield Street, the investigating officers] recovered twenty-three fired cartridge cases ("FCCs"). Specifically, officers recovered eleven 7.62-caliber casings, which were projected from an AK-47 (a military-grade assault rifle), and twelve .40 caliber FCCs, which were shot from a .40 caliber automatic handgun. . . . As [officers] surveyed the area, [they were] approached by a witness, who told the [officers that] a Toyota vehicle that was involved in the shooting had a partial tag of KDS, and that same vehicle was parked around the corner. [Officers] discovered a gold, '98 Toyota Camry with the license plate number "KDS-2294." . . . .

[As they surveyed the vehicle, officers] noticed the muzzle of a rifle sticking out from a pile of clothing, which was located behind the passenger seat. . . . The officers recovered the firearm—a 7.62 caliber assault rifle—from the vehicle. The officers also found a .40 caliber Glock that had an extended 30-round clip. Both weapons were loaded when officers recovered them. A ballistics test later confirmed that the firearms recovered from the '98 Toyota Camry matched the twenty-three FCCs recovered from the intersection of N. Sheridan St. and W. Clearfield St.

[Officers] notified the dispatcher about the vehicle and firearms and asked the dispatcher to "run" the vehicle's tag information. The dispatcher informed [officers] that the vehicle was registered to Yeidy Torres ("Ms. Torres") [at] a residence that was located only a few blocks away from the crime scene. [Officers immediately traveled to the residence,] knocked on the door and were immediately met by Ms. Torres, who was visibly upset and shaken. Before the officers could speak, Ms. Torres stated, "I want to report my car as stolen." The officers asked Ms. Torres whether she had already filed a stolen vehicle report; she indicated that she had not. The officers also confirmed that there were no pending reports of a stolen '98 Toyota Camry.

[While] the officers were interviewing Ms. Torres, her cell phone was "repeatedly ringing" as the contact name "Ernesto" and a photo of Appellant displayed on the screen.

Trial Court Opinion, 2/20/20, at 3-7 (cleaned up).  Thereafter, Ms. Torres admitted that Appellant, who was her child's father, had asked her to report her car as being stolen.  She provided officers with Appellant's name and advised them that he regularly used the car.

Following her release from the hospital, J.S. picked Appellant as the shooter from a photographic line-up prepared by police.  *See* N.T. Trial, 2/15/18, at 49-50, 112.  J.S. also identified an individual named Thomas Bradley as "running away" from the scene of the shooting.  *Id.* at 88-89, 120. Several items belonging to Bradley were also found in Ms. Torres's vehicle.

On April 11, 2017, Appellant was arrested in connection with these events.  At all three docket numbers, he was charged with one count each of attempted murder, aggravated assault, simple assault, and recklessly endangering another person ("REAP").  At Docket 4095, Appellant was also charged with possession of firearms prohibited, firearms not to be carried without a license, and carrying firearms in public in Philadelphia.  The three dockets were joined for trial.  J.S. testified and identified him as the shooter at multiple junctures.  *See* N.T. Trial, 2/15/18, at 40, 76, 95.  In relevant part, Appellant argued that the shooting was perpetrated by Bradley.

Ultimately, a jury found Appellant guilty of the above-noted offenses. On April 23, 2018, he was sentenced to the above-noted sentences.[1]

Appellant filed a timely post-sentence motion challenging the sufficiency of the evidence, the weight of the evidence, and the discretionary aspects of his sentence. The motion was denied by operation of law. Although no immediate direct appeal was filed, Appellant filed a timely *pro se* petition

---

[1] During Appellant's sentencing hearing, the trial court stated its intent to sentence him to fifteen and one-half to thirty-one years of incarceration for each count of attempted murder and a concurrent term of ten to twenty years of incarceration for each count of aggravated assault at Dockets 4094 and 4095. These terms of incarceration were ordered to run concurrently. Also at Docket 4095, Appellant was further sentenced to seven years of probation for possessing a prohibited firearm. At Docket 4906, Appellant was sentenced to fifteen and one-half to thirty-one years of incarceration for attempted murder and seven years of probation for aggravated assault. These penalties were ordered to run consecutively to those imposed at Dockets 4094 and 4095. **See** N.T. Sentencing, 4/23/18, at 11-12. Thus, the trial court manifested an intent to sentence Appellant to an aggregate term of thirty-one to sixty-two years of incarceration, followed by fourteen years of probation.

However, the sentencing orders entered by the trial court differed from the hearing transcript. With respect to the attempted murder counts at Dockets 4094 and 4095, the trial court set Appellant's sentence at fifteen and one-half to thirty-one **and one-half** years. Moreover, the order at Docket 4096 provided that the seven-year period of probation would run concurrently, **not** consecutively, to the period of probation at Docket 4095. Neither the parties nor the trial court have addressed these discrepancies. "In Pennsylvania, the text of the sentencing order, and not the statements a trial court makes about a defendant's sentence, is determinative of the court's sentencing intentions and the sentence imposed." **Commonwealth v. Borrin**, 80 A.3d 1219, 1226 (Pa. 2013); **see also Commonwealth v. Quinlan**, 639 A.2d 1235, 1239 (Pa.Super. 1994) ("Oral statements made by the judge in passing sentence, but not incorporated in the written sentence signed by [the sentencing judge], are **not** part of the judgment of sentence." (emphasis added)). Thus, Appellant's criminal sentence is as set forth in the sentencing orders.

pursuant to the Post-Conviction Relief Act ("PCRA") seeking restoration of his right to appeal. Following the appointment of counsel, the trial court reinstated Appellant's direct appellate rights *nunc pro tunc*. Thereafter, Appellant filed a timely notice of appeal at each of the above-captioned docket numbers. Both he and the trial court have complied with their respective obligations pursuant to Pa.R.A.P. 1925.[2] On April 23, 2020, this Court consolidated these appeals *sua sponte*.

---

[2] The trial court directed Appellant to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b) on August 27, 2019. Appellant's trial counsel sought an extension of time to file, which was granted. On November 6, 2019, Appellant's trial counsel filed a motion to withdraw advising the trial court that Appellant had indicated a wish "to proceed *pro se* with the direct appeal of his case" and requesting that the court hold a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). **See** Motion to Withdraw, 11/6/19, at ¶¶ 4-6. The trial court did not immediately respond to this filing. In the interim, trial counsel filed a Rule 1925(b) statement on Appellant's behalf to avoid waiver, which raised the same issues Appellant has raised in his brief to this Court. The trial court did not file a responsive Rule 1925(a) opinion at that time.

In response to a subsequent application filed by trial counsel, this Court remanded the case for a **Grazier** hearing. However, the COVID-19 pandemic caused the hearing to be rescheduled several times until it was held on February 5, 2021. Ultimately, the trial court granted Appellant's request to proceed *pro se*. Thereafter, Appellant *pro se* filed a *pro se* Rule 1925(b) raising claims for relief that were different than those raised by trial counsel. **See** *Pro Se* Rule 1925(b) Statement, 2/19/21. Several weeks later, Appellant filed a motion in the trial court to withdraw his request for self-representation and seeking the re-appointment of trial counsel. **See** Motion to Withdraw Request for Self-Representation, 5/13/21, at ¶ 1. Additionally, Appellant disclaimed the additional issues that he had sought to raise in his *pro se* Rule 1925(b) statement. **Id**. at ¶ 2 ("Petitioner also recognizes the issues he wishes to raise for relief would be best served during PCRA proceedings[.]"). *(Footnote Continued Next Page)*

Appellant has raised the following issues for our consideration:

I. Was the evidence sufficient to sustain Appellant's convictions where the evidence viewed in the light most favorable to the Commonwealth was, at most, equally consistent with Appellant's innocence as with his guilt and, therefore, pursuant to the "equipoise doctrine," insufficient as a matter of law?

II. Was the verdict also contrary to the clear weight of the evidence such as to shock one's sense of justice where the only evidence implicating Appellant was the inconsistent and inherently contradictory testimony of a witness who could not describe him and was confused about basic details of the crime?

III. Did the trial court abuse its discretion in sentencing Appellant to an aggregate sentence of 31 ½ to 62 years of incarceration where the court failed to consider any individualized sentencing

---

Although the trial court did not explicitly grant Appellant's *pro se* motion, private replacement counsel entered her appearance on Appellant's behalf. Shortly thereafter, the trial court sent a letter to this Court seeking guidance regarding the issues raised in Appellant's *pro se* Rule 1925(b) statement. **See** Letter, 4/5/21, at 2 (unpaginated) ("[I]s this court required to file a Rule 1925(a) opinion addressing Appellant's February 19[, 2021] statement of errors complained of on appeal?"). This Court responded by letter and advised the trial court that "no action" was required. Letter, 4/6/21, at 1 (unpaginated). In its letter, the trial court also noted that replacement counsel had filed a motion seeking leave to amend Appellant's Rule 1925(b) statement on March 22, 2021. Neither this filing nor an order granting leave to amend appears in the certified record.

To the extent Appellant sought to amend his Rule 1925(b) statement with his *pro se* filing, he was unsuccessful due to his failure to seek to do so. **See Commonwealth v. Woods**, 909 A.2d 372, 378 (Pa.Super. 2006). With respect to the March 22, 2021 motion from replacement counsel, we may not speculate as to matters that are *de hors* the certified record. **See** Pa.R.A.P. 1921. Even assuming, *arguendo*, a colorable request to amend under Rule 1925 was made, it was not granted, and Appellant has not raised any claim for relief in this Court. Furthermore, Appellant has not raised any arguments concerning these procedural irregularities in his brief. Thus, we will confine our review to the issues discussed in Appellant's brief and preserved in his initial, timely Rule 1925(b) statement.

factors and provided no rationale whatsoever for imposing such a lengthy sentence?

Appellant's brief at 5 (cleaned up).

Appellant's first claim challenges the sufficiency of the Commonwealth's evidence. The standard and scope of our review is well-established:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Ventura*, 975 A.2d 1128, 1142 (Pa.Super. 2009) (cleaned up).

"In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." *Commonwealth v. Strafford*, 194 A.3d 168, 175 (Pa.Super. 2018). "'Evidence of identification need not be positive and certain to sustain a conviction.'" *Id*. (quoting *Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa.Super. 2011) (*en*

*banc*)). Furthermore, "'any indefiniteness and uncertainty in the identification testimony goes to its weight. Direct evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence.'" *Id*. (quoting *Commonwealth v. Hickman*, 309 A.2d 564, 566 (Pa. 1973)).

Appellant asserts that the Commonwealth did not sufficiently establish that he was the shooter on the day in question. However, J.S. positively identified him as the shooter before and, critically, during Appellant's trial. *See* N.T. Trial, 2/15/18, at 40, 76. This testimony, alone, provides a sufficient basis to establish his identity as the perpetrator. *See Commonwealth v. Duncan*, 373 A.2d 1051, 1053-54 (Pa. 1977) (testimony of a single eyewitness sufficient to support conviction for third-degree murder); *Commonwealth v. Johnson*, 180 A.3d 474, 478 (Pa.Super. 2018) ("A victim's in-court testimony, identifying the defendant as the perpetrator of a crime, is by itself sufficient to establish the identity element of that crime.").

Appellant has also invoked the "equipoise principle," which states that "[w]hen two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances, a jury must not be permitted to guess which inference it will adopt, especially when one of the two guesses may result in depriving a defendant of his life or his liberty." *Commonwealth v. Woong Knee New*, 47 A.2d 450, 468 (Pa. 1946). This doctrine addresses the "rare situation" where "the entirety of the evidence adduced at trial,

- 9 -

viewed in a light most favorable to the Commonwealth, yields competing ultimate inferences equally consistent with the defendant's innocence as with his guilt, thereby rendering the factfinder's guilty verdict the product of surmise or conjecture." ***In Interest of J.B.***, 189 A.3d 390, 412 (Pa. 2018).

As noted above, Appellant argued at trial that the shooting was perpetrated by Bradley. However, the only evidence speaking to his identity as the shooter was an anonymous 911 caller who reported hearing from other unnamed, third parties that the shooting was perpetrated by someone named "Thomas." ***See*** N.T. Trial, 2/16/18, at 188. Viewing this evidence in combination with Bradley's presence at the scene of the shooting and the discovery of his belongings in Ms. Torres's vehicle, Appellant argues that the Commonwealth's evidence is in "equipoise" regarding Appellant's identity as the shooter in this case.[3] We disagree.

While it may be a sheer possibility that Bradley was the shooter on the day in question, we reject Appellant's position that this potentiality was equally consistent with Appellant's guilt. As noted above, Appellant's identification as the shooter by an eyewitness was sufficient to sustain his

---

[3] Appellant's argument on this point largely disparages the credibility of the Commonwealth's eyewitness identification evidence. Any "[v]ariances in testimony . . . go to the credibility of the witnesses and not the sufficiency of the evidence." ***Commonwealth v. Johnson***, 180 A.3d 474, 478 (2018). Thus, to the extent that Appellant seeks to challenge the believability of J.S.'s testimony identifying Appellant as the shooter, such an argument is properly addressed to the weight of the evidence.

guilt. *See Duncan*, *supra* at 1053-54; *Johnson*, *supra* at 478. There is no competing eyewitness testimony indicating that Bradley was the shooter and we do not believe that an anonymous tip providing one-half of Bradley's name creates an equal probability that he was the shooter. *See Commonwealth v. Brown*, 996 A.2d 473, 477 (Pa. 2010) ("[W]e have recognized a known informant is far less likely to produce false information."). We also emphasize that "the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Gonzalez*, 109 A.3d 711, 716 (Pa. Super. 2015). Thus, we find no merit in Appellant's claim.

Appellant's second claim challenges the weight of the Commonwealth by disparaging the credibility of J.S.'s identification. Specifically, Appellant asserts that J.S.'s testimony conflicted with the initial description she provided to detectives in the immediate aftermath of the shooting. *See* Appellant's brief at 29-31. The legal principles governing our review are well-established:

> The law pertaining to weight of the evidence claims is well-settled. The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight than to ignore them or to give them equal weight with all the facts is to deny justice.
>
> On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the

- 11 -

verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

***Gonzalez***, ***supra*** at 723 (cleaned up).

Appellant has complied with Pa.R.Crim.P. 607(A)(1)(2) by filing a post-sentence motion raising a weight challenge. **See** Post-Sentence Motion, 4/30/18, at ¶ 4 ("[Appellant] believes that the verdict is against the weight of the evidence."). His claim was denied by operation of law and no specific issue concerning the weight of the Commonwealth's evidence was ever discussed. In his Rule 1925(b) concise statement of errors complained of on appeal, Appellant averred only that the trial court "erred and unfairly prejudiced [Appellant] when the [trial court] denied the post-sentence [m]otion, because the verdict was against the weight of the evidence." Appellant's Rule 1925(b) Statement, 12/3/19, at ¶ 2. Appellant offered no specific allegations identifying the basis of his argument concerning the weight of the Commonwealth's evidence. In its Rule 1925(a) opinion, the trial court concluded Appellant had waived this issue due to the vagueness of his Rule 1925(b) statement. **See** Trial Court Opinion, 2/20/20, at 8 n.6 ("Although Appellant properly preserved his challenge to the weight of the evidence in a post-sentence motion, the issue is waived nonetheless, as he failed to properly frame the issue for appellate review."). We agree.

This Court has previously held that a defendant who neglects to offer specific reasons as to why his verdict is contrary to the weight of the evidence

- 12 -

in his Rule 1925(b) statement waives the argument. *See Commonwealth v. Freeman*, 128 A.3d 1231, 1248-49 (Pa.Super. 2015) ("[A concise statement] which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of not [concise statement] at all."); *Commonwealth v. Seibert*, 799 A.2d 54, 62 (Pa.Super. 2002) ("When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues."). Here, Appellant offered nothing more than a bald allegation challenging the weight of the evidence, which impeded the trial court's review of the claim. Thus, it is waived.

Appellant's third claim concerns the discretionary aspects of his sentence, wherein he asserts that the trial court "imposed a sentence without consideration of all relevant factors and without explaining its rationale for the imposition of the sentence[.]" Appellant's brief at 34; *see Commonwealth v. Fowler*, 930 A.2d 586, 593 (Pa.Super. 2007) (holding that a claim that the sentencing court considered improper factors and failed to state its reasons for sentencing in open court is a challenge to the discretionary aspects of sentencing). Specifically, Appellant asserts that the trial court "impermissibly relied solely on the seriousness of the crime while failing to take into account any individualized assessment of his needs or any other relevant sentencing factor[.]" Appellant's brief at 34.

We note that "[a]n appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction." *Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa.Super. 2014). In determining whether Appellant has secured this Court's jurisdiction, we consider whether: (1) Appellant has filed a timely notice of appeal; (2) the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) the brief includes a "concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence" pursuant to Pa.R.A.P. 2119(f); and (4) Appellant has presented a "substantial question" that the sentence is not appropriate under the Sentencing Code. *Id*.

Appellant has complied with the first two of these requirements by filing a timely notice of appeal and preserving his claim in a post-sentence motion. *See* Post-Sentence Motion, 4/30/18, at ¶ 5. Furthermore, Appellant has appended a Rule 2119(f) statement to his brief as required by Pennsylvania law. *See* Appellant's brief at 33. Thus, we will review the contents of the Rule 2119(f) statement to discern whether Appellant has raised a substantial question. *See Commonwealth v. Provenzano*, 50 A.3d 148, 154 (Pa.Super. 2012) ("[W]e cannot look beyond the statement of questions presented and the prefatory [Rule] 2119(f) statement to determine whether a substantial question exists.").

Appellant's argument is straightforward and alleges that the trial court "relied solely on the seriousness of [A]pellant's crime in imposing an unduly harsh sentence without considering any individualized sentencing factors or providing an explanation for the imposition of a lengthy sentence." Appellant's brief at 33. This Court has previously held that a defendant does "raise a substantial question by alleging that the sentencing court did not sufficiently state its reasons for the sentence." *Commonwealth v. McNabb*, 819 A.2d 54, 56 (Pa.Super. 2003). Furthermore, "[h]e also raises a substantial question by alleging his sentence is excessive due to the trial court's reliance on impermissible factors." *Id*. Thus, we will address the merits of Appellant's challenge to the discretionary aspects of his sentence.

Our standard of review in this context is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercises its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

A sentencing judge has broad discretion in determining a reasonable penalty, and appellate courts afford the sentencing court great deference, as it is the sentencing court that is in the best position to view the defendant's character, displays of remorse, defiance, or indifference, and the overall effect and nature of the crime. When imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). As we have stated, [a] court is required to consider the particular circumstances of the offense and the

- 15 -

character of the defendant. In particular, the sentencing court should refer to the defendant's prior criminal record, his age, personal characteristics, and his potential for rehabilitation.

. . . .

Our Supreme Court has determined that where the trial court is informed by a [presentence investigation report ("PSI")], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed. The sentencing judge can satisfy the requirement that reasons for imposing sentencing be placed on the record by indicating that he or she has been informed by the [PSI]; thus properly considering and weighing all relevant factors.

*Commonwealth v. Edwards*, 194 A.3d 625, 637-38 (Pa.Super. 2018) (cleaned up).

A sentencing court is also statutorily required to disclose in open court the reasons for the sentences imposed. *See* 42 Pa.C.S § 9721(b) ("In every case in which the court imposes a sentence for a felony or misdemeanor, . . . the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reasons for the sentence imposed."). However, "[t]he court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9712(b)[.]" *Commonwealth v. Antidormi*, 84 A.3d 736, 761 (Pa.Super. 2014). Rather, the trial court "can satisfy this disclosure requirement by indicating, on the record, that he has been informed by a [PSI]." *Commonwealth v. Egan*, 679 A.2d 237, 239 (Pa.Super. 1996)

- 16 -

A PSI was generated and considered by the trial court. *See* N.T. Sentencing, 4/23/18, at 14 ("And, again, this sentence does take into consideration the reports that were generated."). Therefore, we presume the trial court was fully informed of the relevant circumstances and conclude that the trial court's duty to disclose during Appellant's sentencing has been fulfilled. *Egan*, *supra* at 239. In its Rule 1925(a) opinion, the trial court justified the sentence imposed, as follows:

> In the case at bar, the nature of Appellant's crimes [were] extraordinarily violent and demands a sentence that is significant both as a deterrent and as a punishment. On August 30, 2016, Appellant indiscriminately fired twenty-three bullets into a crowded residential street. His use of two different firearms—including a military-grade assault rifle and a Glock with an extended clip—reflect a specific intent to inflict extreme pain, suffering, and death. Appellant's lack of provocation and the indifference with which he targeted dozens of random bystanders demonstrate that he [is] an absolute danger to society. Moreover, the stunning fact that he only managed to shoot three people and that none of his victims died is nothing short of a miracle. Had Appellant aimed differently or had the people on [the street] been in slightly different locations, this incident could have easily resulted in [the] deaths of several innocent people.
>
> Additionally, Appellant's actions will have a severe, permanent impact on Mr. Baker, Mr. Foster, J.S. As a result of Appellant's actions, Mr. Baker lost vision in his left eye. Mr. Foster was shot four times in his left leg; his injuries were so severe that fragments of his broken bones were scattered in the back of the police vehicle as he was being transported to the hospital. He required extensive treatments and surgeries which spanned the course of thirty days, and as a result of his injuries, he can longer run, jump, or participate in any weight-bearing activities. J.S., who was only twelve years old at the time, was shot in her right thigh. As a result of her injuries, she lost her spot on her track team and can no longer run or play basketball as well as she used to. Further, each victim will undoubtedly continue to suffer psychological trauma from the incident. . . .

- 17 -

Appellant's sentence also accounts for his history, characteristics, and this court's observations of Appellant—which includes this court's thorough review of his [PSI]. . . . Additionally, Appellant's sentence is consistent with his rehabilitative needs, as this court order him to undergo drug treatment, mental health treatment, job training, and anger management.

Finally, in fashioning its sentence, this court considered the guidelines put forth by the Pennsylvania Commission on Sentencing and imposed a sentence that was squarely within the guidelines' standard range.

Trial Court Opinion, 2/20/21, at 15-16 (cleaned up). We discern no abuse of discretion in the trial court's reasoning. Thus, no relief is due.

Judgment of sentence affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 1/13/2022*