J-S33029-18

2018 PA Super 219

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                : PENNSYLVANIA
                                :
            v.                  :
                                :
                                :
                                :
LOUIS BUTLER,                   :
                                :
            Appellant           : No. 3509 EDA 2017

Appeal from the Judgment of Sentence Entered August 1, 2017
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002288-2017

BEFORE:   OTT, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

OPINION BY McLAUGHLIN, J.:                    **FILED AUGUST 01, 2018**

Louis Butler appeals from the judgment of sentence entered on August 1, 2017, after the trial court found him guilty of conspiracy, possession with intent to deliver ("PWID"), possession of a controlled substance, and possession of drug paraphernalia.[1] Butler contends that the trial court erred in denying his motion to suppress because there was no reasonable suspicion to conduct an investigative detention. We affirm.

On July 31, 2017, Butler filed a suppression motion with the trial court, arguing that Officer Ronald Rosenberg lacked "a reasonable cause, probable cause, reasonable suspicion, or necessary legal authority" to stop his vehicle. N.T., Suppression Hearing, 7/31/17, at 4. The following testimony was adduced at the Suppression Hearing.

_____

*  Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 903, 35 P.S. §§ 780-113(a)(30), 780-113(a)(16), and 780-113(a)(32), respectively.

On July 18, 2016, Officer Rosenberg was on patrol with the Richland Township Police Department. *Id.* at 7. At the time, Officer Rosenberg had been with the department for 11 years and had been a narcotics officer for 6 years. *Id.* at 8. In order to obtain this position, he attended Bucks County Narcotics School, where he learned about subjects such as drug investigation, confidential informants, and undercover work. *Id.* at 7. Officer Rosenberg has made approximately 50 arrests involving possession with intent to deliver. *Id.* at 8.

Officer Rosenberg received a phone call on the day in question, July 18, 2016, from Gary Bulicki. *Id.* Officer Rosenberg did not know Bulicki personally but generally knew that Bulicki was in the police department "system." *Id.* at 15, 16, 20. Officer Rosenberg did not know whether Bulicki was known to the system as a victim or a defendant. *Id.* at 20. Officer Rosenberg said he looked into Bulicki's status with the department "after it was done," but did not state the information (if any) that he found. *Id.*

Bulicki told Officer Rosenberg that he was going to drive his son, Vincent Bulicki, to the area of the Walmart on Sunshine Drive in Quakertown, Bucks County, to purchase heroin from two black males known as "Pops" and "Old Head." *Id.* at 9, 18. He stated that the males would be in a black Tahoe. *Id.* at 9. Bulicki gave Officer Rosenberg a physical description of his son as well as of what his son would be wearing. *Id.* at 10, 18, 19. Bulicki told Officer Rosenberg that he had received the information about the individuals, the vehicle, and the narcotics transaction from his son, Vincent. *Id.* at 17. He also

said that he previously had driven his son to buy narcotics from the males but he did not say how many times. *Id.*

Bulicki stayed in touch with Officer Rosenberg for two hours. *Id.* at 19. At around 12 p.m. the same day, Bulicki dropped Vincent off near the Walmart. *Id.* at 10. An undercover officer nearby relayed to Officer Rosenberg that Vincent entered a black Tahoe. *Id.* at 23. Based on his observations, the information he received, and his experience, Officer Rosenberg believed that a narcotics transaction was occurring in the Tahoe. *Id.* at 11. Officer Rosenberg went to the area of Sunshine Drive where he activated his vehicle's overhead lights, pulled up behind the Tahoe, and approached the driver's side of the Tahoe. *Id.* While approaching the vehicle, he observed Butler in the front passenger seat bending down and reaching between his legs as though he was either grabbing or hiding something. *Id.* at 11-12. Vincent was in the back seat, behind Butler. *Id.* at 12. Officer Rosenberg directed his partner, Officer Zachary Herb, to remove Butler from the vehicle. *Id.* Officer Rosenberg then patted Butler down, recovering three Percocets in a little plastic bag in the small pocket of his pants. *Id.* at 14-15, 25.

After hearing the testimony, the trial court denied the suppression motion. On August 1, 2017, after a bench trial, the court found Butler guilty of the above-referenced crimes and sentenced him to two and one half to five years' incarceration for PWID and no further penalty for the remaining charges. Butler filed a post-sentence motion, which the trial court denied. This timely appeal followed.

- 3 -

Butler raises one issue for this Court to review: "Was there sufficient evidence that the vehicle was involved in criminal activity to justify an investigative detention?" Butler's Br. at 4.[2]

Our standard of review for a challenge to the denial of a suppression motion is "limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Jones***, 988 A.2d 649,654 (Pa. 2010). Since the Commonwealth prevailed at the suppression motion hearing "we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." ***Id.*** Because Butler's challenge to the denial of his suppression motion raises a question of law, our scope of review is plenary. ***Id.***

The parties here agree that the vehicle stop constituted an investigative detention, which requires reasonable suspicion that criminal activity is afoot. ***Commonwealth v. Jones***, 874 A.2d 108, 116 (Pa.Super. 2005). "Reasonable suspicion is a less demanding standard than probable cause . . . in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." ***Commonwealth v. Moore***, 805 A.2d 616, 620 (Pa.Super. 2002)(citation omitted). An investigative detention is

---

[2] Butler's Pa.R.A.P. 1925(b) statement challenged the sufficiency of the evidence; however, he did not include that sufficiency challenge in his brief to this Court. He has thus abandoned that challenge on appeal.

justified where "a police officer [is] able to point to 'specific and articulable facts' leading him to suspect criminal activity is afoot." **Commonwealth v. Brown**, 996 A.2d 473, 477 (Pa. 2010) (citations omitted). In assessing whether the officer had reasonable suspicion, we take into account the totality of the circumstances and give due weight "to the specific, reasonable inferences drawn from the facts in light of the officer's experience." **Id.**

Where an informant "identifies [him-] or herself to police, there is a degree of reliability attached to the tip, because the informant has placed [him-] or herself at risk for prosecution for giving false information to the police if the tip is untrue." **See Commonwealth v. Hayward**, 756 A.2d 23, 34 (Pa.Super. 2000)(citation omitted). In contrast, the word of an anonymous informer who has never previously cooperated with the police or "**who does not disclose his or her identity to the police**" lacks such indicia of reliability. **Id.** at 35 (emphasis added). Information from a known source that police have corroborated can "g[iv]e rise to reasonable suspicion sufficient to warrant an investigative detention." **Commonwealth v. Brown**, 996 A.2d at 479.

Butler contends that while Bulicki identified himself to Officer Rosenberg, there was reason to question his reliability. **See** Butler's Br. at 14. Butler argues that because Officer Rosenberg was unaware in what capacity Bulicki was known to the police, Bulicki should be considered an unreliable source.

- 5 -

The trial court determined that Bulicki was a sufficiently reliable source to support reasonable suspicion because he provided police not only his full name but also the source of his information: his own son. **See** Trial Court Opinion, filed 12/4/17, at 7. The court further pointed out that police did not rely on Bulicki's report alone to conduct an investigative detention. Rather, the police followed up on Bulicki's tip and performed their own investigation, which corroborated the tip in all aspects.

We agree with the trial court's analysis. Reasonable suspicion existed in this case based on the information Bulicki, an identified informant, relayed to police, which information police corroborated before conducting the vehicle stop. Furthermore, Bulicki's statements to police tended to implicate him in a scheme to purchase heroin, itself a crime. A self-incriminating tip from a known person is more reliable because of the risk inherent in making such a statement. **United States v. Greenburg**, 410 F.3d 63, 67–68 (1st Cir. 2005) (listing self-incriminating nature of known tipster's statement among factors in that case establishing probable cause). Bulicki's tip had sufficient indicia of reliability to justify the police to stop the Tahoe.

Butler's further argument that there was "really no evidence" corroborating Bulicki's information is likewise meritless. Butler's Br. at 17-18. The evidence at the suppression hearing showed that before effectuating the vehicle stop, police officers conducted surveillance and made observations consistent with details that Bulicki had provided. They observed Bulicki drop Vincent at 12 p.m. near the Walmart, and noted that Vincent's appearance

and clothing matched Bulicki's report. They then saw Vincent get inside of a black Tahoe containing two black males. The record belies the notion that Officer Rosenberg relied on an uncorroborated tip to conduct the vehicle stop.

In sum, the information available to Officer Rosenberg, as he would have understood it due to his extensive experience – 6 years in narcotics, 11 years as a police officer overall, and approximately 50 narcotics arrests during his career – gave him reasonable suspicion. Bulicki provided specific information about the people involved in, and place and time of, the heroin purchase that police independently corroborated; he identified himself to police when giving the tip; and he nonetheless gave information that could subject him to criminality. Officer Rosenberg had reason enough to believe that a heroin sale was occurring in the Tahoe and therefore was entitled to stop the Tahoe. We reject Butler's challenge to the denial of his motion to suppress and affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/1/18