J-S08035-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTONIO LARY | : | |
| | : | |
| Appellant | : | No. 895 MDA 2021 |

Appeal from the Judgment of Sentence Entered April 23, 2019
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0003572-2018

BEFORE:  BOWES, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED: MAY 23, 2022**

Antonio Lary (Appellant) appeals, *nunc pro tunc*, from the judgment of sentence entered in the Lancaster County Court of Common Pleas after his jury conviction of one count of possession with intent to distribute (PWID)[1] cocaine.  On appeal, Appellant challenges the denial of his motion to suppress alleging his detention was illegal and exceeded the lawful scope and duration of a traffic stop.  For the following reasons, we affirm.

The underlying facts of the case are as follows.  On June 7, 2018, Lancaster City Police Officers Timothy Sinnott and Nathan Parr conducted a traffic stop of the vehicle Appellant was driving for a summary traffic violation.  *See* Trial Ct. Op., 9/30/21, at 1-2.  During the encounter, the officers suspected Appellant may have a weapon.  Consequently, they ordered him

_____

[1] 35 P.S. § 780-113(a)(30).

out of the vehicle and conducted a pat-down search, which revealed crack cocaine. Appellant was arrested and charged with one count of PWID, and a summary traffic violation.[2] ***See id*** at 2-4.

Appellant, represented by Michael McHale, Esquire (Trial Counsel), filed a motion to suppress evidence, alleging the officers did not have reasonable suspicion or probable cause to effectuate the traffic stop, the officers did not have reasonable suspicion to support an investigative detention, and as such, any evidence recovered was inadmissible.[3] Appellant's Motion to Suppress Evidence, 8/10/18, at 3-6 (unpaginated). On January 2, 2019, the trial court held a hearing on this motion where Officer Sinnott, Officer Parr, and Appellant testified as follows.

Officer Parr testified that on June 7, 2018, he and Officer Sinnott were on patrol when they observed a car driving with an illegal tint. N.T. Omnibus Pretrial H'rg, 1/2/19, at 7-8. The officers initiated a traffic stop in a "high crime, high drug trafficking area" and began to approach the vehicle. ***Id.*** at 9, 28-29. While approaching the vehicle the officers used "LED lights[,]" which

---

[2] 75 Pa.C.S. § 4107(a)(1) (violation of equipment standards).

[3] Though Appellant's claim stems from a traffic stop, the officers searched only his person and not his vehicle, thus we do not need to consider ***Commonwealth v Alexander***, 243 A.3d 177 (Pa. 2020). ***See id.*** at 206 (holding that under the Pennsylvania Constitution, warrantless **vehicle searches** must be supported by both probable cause and exigent circumstances and overturning the prior adoption of the federal automobile exception in ***Commonwealth v. Gary***, 91 A.3d 102 (Pa. 2014) (plurality)). Nor does Appellant raise any such claim.

allowed them to see "a silhouette of a person." *Id.* at 10. Officer Parr "couldn't see [Appellant's] hands[,]" but "could see . . . that [Appellant's] right hand was below the seat." *Id.* At that point, the officers suspected Appellant "might be concealing a weapon" and ceased their approach to the vehicle. *Id.* at 11. Officer Parr instructed Appellant to "put his hands on the steering wheel[,]" but Appellant refused to comply. *Id.* at 10. After commanding Appellant a second time to put both hands on the steering wheel, Appellant "looked back and put his left hand on the steering wheel" indicating he heard the command. *Id.* at 10-11. Officer Parr made a third command for Appellant to put both hands on the steering wheel and Appellant finally complied. *Id.* at 18. Once both of Appellant's hands were on the steering wheel, the officers continued their approach to the vehicle. *Id.* After approaching the vehicle, Officer Sinnott asked Appellant "to turn off the vehicle[.]" *Id.* at 23. At some point during the traffic stop,[4] Officer Parr measured the window tint of Appellant's vehicle and determined the tint level was "at 27 percent[,]" significantly lower than the "70 percent" required under Pennsylvania law.[5] *Id.* at 8.

Officer Sinnott testified that after initiating the traffic stop, he observed Appellant "concealing his right hand . . . somewhere below his seat[,] possibly

---

[4] Officer Parr did not specify when during the stop he measured the window tint level on Appellant's vehicle.

[5] Appellant does not challenge the legality of the stop, nor does he contest the degree of window tint justifying the stop.

. . . between the driver's seat and the center console area." N.T. Omnibus Pretrial H'rg at 26. Due to Appellant's hand placement, Officer Sinnott was concerned he "could have easily been concealing a weapon, most likely a firearm." *Id.* at 28. Officer Sinnott believed Appellant's refusal to comply with Officer Parr's demands to put both of his hands on the steering wheel was "suspicious and deceptive[.]" *Id.* at 29. When Appellant eventually placed both hands on the steering wheel, Officer Sinnott continued to approach the vehicle. *Id.* at 30. Despite suspicions of a weapon, Officer Sinnott did not ask Appellant to immediately exit the vehicle because he "was comfortable with what [he] observed and . . . believe[d he and Officer Parr would] be able to react" if Appellant failed to comply with their requests. *Id.* at 31.

Officer Sinnott questioned Appellant regarding his "trip details . . . to see if . . . what [he was] saying [made] sense with what" Officer Sinnott observed. N.T. Omnibus Pretrial H'rg at 32. Officer Sinnott questioned Appellant for "a couple of minutes at most." *Id.* at 47. After speaking with Appellant, Officer Sinnott remained suspicious of criminal activity "based off [Appellant's] movements, but the answers that [Appellant] provided [him] and the way [Appellant] was speaking" increased his "suspicions." *Id.* at 32.

Officer Sinnott elected "to remove" Appellant from the vehicle for officer safety and instructed him "to turn the vehicle off" and give him the keys. N.T. Omnibus Pretrial H'rg at 32. Appellant refused the request and Officer Sinnott was forced to "grab the keys out of [Appellant's] hands." *Id.* at 32-33. Officer

Sinnott removed Appellant from the car and performed a "weapons pat down." *Id.* at 33. While doing so, Officer Sinnott "felt a large corner-tie sandwich style baggie" that he "immediately" recognized as "crack cocaine" in Appellant's right front pants pocket. *Id.* at 34. Officer Sinnott retrieved the narcotics and placed Appellant under arrest. *Id.* at 36.

Additionally, Officer Sinnott stated that his police vehicle was equipped with mobile video audio recording (MVR), but it "was not requested to be saved" because "the MVR doesn't move, it just points straight ahead [and] wouldn't have caught anything that would have been worth saving." N.T. Omnibus Pretrial H'rg at 27. He also testified that MVR videos are "only saved for a certain amount of time" and "by the time it was requested, . . . it had already been saved over[.]" *Id.*

Appellant testified on his own behalf, stating that after the officers signaled him to stop his vehicle, he was attempting to retrieve his ID when he heard one of the officers "command [him] to put [his] hands on the steering wheel[.]" N.T. Omnibus Pretrial H'rg at 50-52. Appellant stated he complied with the officer's order "the first time[,]" but that the officers were "correct" that his "right hand was down at his waist" before he put both of them on the steering wheel. *Id.* at 52, 55. Appellant explained he was attempting to "retriev[e his] identification[,]" when Officer Sinnott "approached the car too fast where the window was already down" and requested to see Appellant's identification, which he retrieved from his "right side." *Id.* at 51-53. Officer Sinnott then flashed "his flashlight into the car to look . . . for things." *Id.* at

51. Appellant testified that he told the officers, "I'm going to put my hands in the air so you can see[,]" while placing his hands in the air. ***Id.***

On January 28, 2019, the trial court denied Appellant's motion to suppress. This case proceeded to jury trial on February 4, 2019, and Appellant was found guilty of PWID.[6] On April 22, 2019, the trial court sentenced Appellant to four to eight years' incarceration. Trial Counsel did not file a direct appeal.

In October 2019, Appellant requested the appointment of new counsel. Thereafter, on December 2nd, Appellant filed a *pro se* petition under the Post-Conviction Relief Act (PCRA),[7] asserting the traffic stop was a stop and frisk, the MVR video was not preserved for trial, and Trial Counsel was ineffective for failing to request MVR video evidence and file a direct appeal. Appellant's Motion for Post Conviction Collateral Relief, 12/2/19, at 3. The PCRA court appointed counsel and on July 10, 2020, MaryJean Glick, Esquire, filed an amended PCRA petition alleging various claims of ineffective assistance of Trial Counsel including counsel's failure to file a direct appeal.[8] Appellant's

_____

[6] The trial court found Appellant not guilty of the summary traffic violation.

[7] 42 Pa.C.S. §§ 9541-9546.

[8] The amended petition also challenged Trial Counsel's ineffectiveness for: (1) failing to file a brief in support of the motion to suppress; (2) failing to argue that police exceeded the scope of Appellant's detention after the traffic stop; (3) failing to argue that the officers lacked reasonable suspicion to frisk Appellant; (4) failing to timely request MVR video evidence; (5) failing to seek exclusion of the officers' testimony "regarding the portion of the traffic stop
*(Footnote Continued Next Page)*

Amended Motion for Post-Conviction Collateral Relief, 7/10/20, at 13.
Attorney Glick filed two supplements to Appellant's amended PCRA petition,
raising additional ineffective assistance claims.[9]

The court held a PCRA hearing on March 5, 2021,[10] and on June 9,
2021,[11] entered an order, granting Appellant relief on his claim that Trial
Counsel was ineffective for failing to file a direct appeal. *See* Order, 6/9/21,
at 1 n.1 (unpaginated). The court "reinstated" Appellant's right to "directly
appeal the issue of suppression [ ] on the record established during the
January 2, 2019, hearing[.]" *Id.* at 2. The court did not rule on any of
Appellant's additional PCRA claims. Appellant then filed a timely appeal and

---

which was recorded by the MVR[;]" and (6) failing to elicit testimony from
Appellant pertaining to the timeline of the traffic stop. Appellant's Amended
Motion for Post-Conviction Collateral Relief, at 8-11 (unpaginated).

[9] In the first supplement, Appellant alleged "additional ineffectiveness claims
related to the Commonwealth's destruction of the MVR record[ing]."
Appellant's Supplement to the Amended Motion for Post-Conviction Collateral
Relief, 8/5/20, at 1 (unpaginated). In the second supplement, he alleged Trial
Counsel was ineffective for failing to question him regarding the location of
the traffic stop, the length of the traffic stop, and details pertaining to the MVR
video evidence, and for failing to properly question Officer Sinnott about the
MVR video evidence. Appellant's Second Supplement to the Amended Motion
for Post-Conviction Collateral Relief, 1/21/21, at 1-2 (unpaginated).

[10] The transcript for Appellant's March 5, 2021, PCRA hearing is mislabeled
"Suppression Hearing."

[11] On April 27, 2021, Christopher Tallarico, Esquire entered his appearance as
counsel for Appellant. Both Attorney Tallarico and Attorney Glick are
employed by the Lancaster County Office of the Public Defender.

complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[12]

Appellant raises a single claim on appeal:

Did the trial court err in denying [Appellant's] Motion to Suppress the cocaine seized during the frisk of his person, where [Appellant] was frisked during an illegal detention which had exceeded its lawful scope and duration?

Appellant's Brief at 4.

Appellant's sole issue on appeal concerns the denial of his motion to suppress evidence. Our standard of review for a challenge to the denial of a suppression motion is as follows:

[Our] standard of review . . . is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where . . . the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

_____

[12] The trial court ordered Appellant to file a concise statement within 30 days of July 20, 2021. Order, 7/20/21. Appellant filed his concise statement on August 19, 2021.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation omitted).

Appellant argues the trial court erred in denying his motion to suppress because the cocaine was seized "as fruit of an illegal detention which exceeded the scope and duration necessary to address the purported reasons for the stop." Appellant's Brief at 25. Appellant avers that "Officer Sinnott spent the majority of [the] detention . . . asking irrelevant questions about where [Appellant] was coming from," and other details about his trip. *Id.* at 31. Appellant claims "the court omitted the facts relevant to the issue of the scope and duration" of his detention and "ignored all evidence presented in the PCRA hearing[.]" *Id.* at 27, 29. Despite acknowledging there is no "case law directly on point" to support his assertion, Appellant insists the court should have considered the evidence presented at his PCRA hearing. *Id.* at 29 n. 1. Further, Appellant challenges that the "missing MVR" video "would have verified" his testimony regarding the encounter. *Id.* at 36. Appellant further alleges Trial Counsel failed to make arguments and properly examine witnesses at trial pertaining to MVR video on the night of the incident. *Id.* at 36, 38.

Preliminarily, our scope of review for suppression rulings is limited to the evidence and testimony presented at the suppression hearing. *In the Interest of L.J.*, 79 A.3d 1073, 1085 (Pa. 2013). Without legal authority suggesting we may do otherwise, we decline to consider the evidence provided at Appellant's PCRA hearing. *See also Smith*, 164 A.3d at 1257.

The duration of a valid vehicle stop is determined by

the seizure's "mission" — to address the traffic violation that warranted the stop, and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate th[at] purpose." Authority for the seizure thus ends when tasks tied to the traffic infraction are — or reasonably should have been — completed.

*Commonwealth v. Malloy*, 257 A.3d 142, 149 (Pa. Super. 2021) (citation omitted). Further, while an officer may "conduct certain unrelated checks" during a lawful traffic stop, they "may not do so in a way that prolongs the stop" without reasonable suspicion to detain the individual. *Id.* (citation omitted).

"[T]o extend a traffic stop beyond the purposes of enforcing a traffic violation," the officers must have reasonable suspicion the individual "may have been engaged in criminal activity independent of the traffic violation." *Commonwealth v. Benitez* 218 A.3d 460, 471 (Pa. Super 2019) (citation and quotation marks omitted). To establish reasonable suspicion, an officer must be able to "point to 'specific and articulable facts' leading him to suspect criminal activity is afoot." *Commonwealth v. Butler*, 194 A.3d 145, 148 (Pa. Super. 2018) (citation omitted). In "assessing whether the officer had reasonable suspicion, we take into account the totality of the circumstances and give due weight 'to the specific, reasonable inferences drawn from the facts in light of the officer's experience.'" *Id.* (citation omitted). It is well settled that:

[E]ven in a case where one could say that the conduct of a person is equally consistent with innocent activity, the suppression court is not foreclosed from concluding that reasonable suspicion nevertheless existed. . . .

**Benitez**, 218 A.3d at 471 (citation omitted).

In the instant case, the trial court concluded that the officers had reasonable suspicion to frisk Appellant:

Officers Sinnott and Parr pulled [Appellant] over at approximately 9:30 p.m. in a high crime, high drug trafficking area in a vehicle with windows so tinted that the [o]fficers could not clearly see inside. [B]oth [o]fficers credibly testified that they could not see [Appellant's] hands and that they noticed [Appellant's] right hand appeared to be below the driver's seat. [Appellant] did not comply with Officer Parr's first two commands to place both hands on the wheel[,] failed to readily comply with Officer Sinnott's instruction to turn off the ignition[, and] failed to comply with [the officer's] request that [Appellant] hand [him] his car keys[.]

Trial Ct. Op. at 6-7. The trial court found that under the "totality of the circumstances," Officer Sinnott's decision to execute a weapons pat down on Appellant was "backed by particular facts from which he could reasonably infer" Appellant may have had a weapon. Trial Ct. Op. at 7; **Butler**, 194 A.3d at 148. We agree with this determination.

While the officers initially stopped Appellant's vehicle due to an illegal window tint, Appellant's behavior gave them reasonable suspicion of other criminal activity. **See Benitez** 218 A.3d at 471. Most notably, the officers observed Appellant's refusal to comply with their direction during the traffic stop – first to place both of his hands on the steering wheel and later to give the officers his keys – posed a threat to their safety. The United States Supreme Court "has long recognized the inherent dangers police officers face"

- 11 -

when executing traffic stops. ***Commonwealth v. Dunham***, 203 A.3d 272, 279 (Pa. Super. 2019) *citing* ***Pennsylvania v. Mimms***, 434 U.S. 106, 110 (1977) (noting a "significant percentage" of police fatalities occur "when the officers are making traffic stops"). Because of this, it is well settled that officers may direct a vehicle occupant's movements for the duration of a traffic stop to ensure officer safety. ***See Commonwealth v. Pratt***, 930 A.2d 561, 567-68 (Pa. Super. 2007) (to maintain control and ensure safety, officers can control "all movement in a traffic encounter"); ***see also Commonwealth v. Thomas***, 179 A.3d 77, 82-83 (Pa. Super. 2018) ("An officer is justified in insisting that a citizen not conceal his hands during an encounter with police; an officer may make this reasonable request to ensure his or her own protection in case that individual is armed."). Here, Officers Sinnott and Parr determined, based on his movements and resistance to show his hands while they approached the vehicle, it was reasonable to assume that Appellant may have had a weapon. N.T. Omnibus Pretrial H'rg at 28. Though Appellant's behavior after the officers approached the car furthered their suspicion of criminal activity, Officer Sinnott stated he "still [ ] would have had suspicion [ ] based off [Appellant's] movements[.]" ***Id.*** at 32. We conclude the trial court's decision to deny Appellant's motion to suppress the evidence is supported by the record before us, and as such, no relief is due. ***See Smith***, 164 A.3d at 1257.

Moreover, to the extent Appellant avers Trial Counsel failed to request an adverse inference at trial concerning the missing MVR video evidence, this

claim is based in counsel's ineffective assistance, and we note that, generally, we defer consideration of these claims until PCRA review. ***See Commonwealth v. Holmes***, 79 A.3d 562, 576 (Pa. 2013).[13] The PCRA court did not rule upon Appellant's ineffectiveness claims, but instead reinstated his direct appeal rights *nunc pro tunc*. Thus, Appellant's ineffectiveness claims would be more appropriately handled under the PCRA. As such, we do not address them on direct appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/23/2022

---

[13] The ***Holmes*** court recognized two exceptions to the deferral of ineffectiveness claims on direct appeal: (1) under extraordinary circumstances where a claim of ineffectiveness is "apparent from the record and meritorious" and "immediate consideration best serves the interests of justice[;]" and (2) when the claim is not record based, but the appellant shows good cause and gives a knowing and express waiver of future PCRA review. ***Holmes***, 79 A.2d at 563-64. The present facts do not fall under either exception.