J-S11030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYMIR STEVENSON | : | No. 1455 EDA 2022 |

Appeal from the Order Entered May 18, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007779-2021

BEFORE: OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:               **FILED AUGUST 15, 2023**

The Commonwealth of Pennsylvania appeals from the order granting Tymir Stevenson's motion to suppress the results of the search of his car based on the validity of the search warrant. We affirm in part, reverse in part, and remand.

On November 4, 2020, a detective from the Philadelphia Police Department applied for a warrant to search Stevenson's car. The affidavit supporting the application, in its entirety, consisted of the following statement.

> On 10-28-20 at approximately 4:55pm, 15th District Officers responded to the area of 1900 Ruan St. to a radio call for gunshots. Upon arrival, sixteen 9mm FCC's were located at 1900 Ruan St. and a vehicle with multiple bullet holes was unattended outside 1930 Ruan St. Neighbors reported an unknown B/M ran from the vehicle eastbound on Ruan St. towards Torresdale Ave. It was later found the complainant is the owner of the vehicle, a 2019 Chevy Impala with Pa tag: LHG9496, and he was transported to Temple Hospital by an unknown person in a private

vehicle. He was shot one time in the right shoulder and was in stable condition. The vehicle was towed to 4298 Macalester St.

Trial Court Opinion, 9/28/22, at 1 (quoting Application for Search Warrant and Affidavit, 11/4/20, at 2).[1] The items to be searched for and seized included, "any and all firearms or ballistic evidence. Any photographs or proof of ownership. And anything of an evidentiary value." *Id.* at 2 (quoting Application for Search Warrant and Affidavit at 1).

The warrant was issued and executed. During the search, the police seized bullet fragments, Stevenson's driver's license, a firearm, and a backpack containing marijuana. *See* Complaint, Affidavit of Probable Cause, 4/1/21, at 2. The Commonwealth charged Stevenson with drugs and firearms violations.[2] On his trial date, Stevenson made an oral motion to suppress the results of the search, arguing that the warrant was not supported by probable cause. N.T., 5/18/22, at 3-4.

After argument, the court granted the motion. It found the affidavit for the warrant was "*extraordinarily* sparse," and lacking not only information about the affiant, such as his "assignment to the case, how long he was a detective, what his duties were, or his experience as a police officer," but also

_____

[1] The Application for Search Warrant and Affidavit is not otherwise included in the certified record, although it was marked as an exhibit at the suppression hearing.

[2] The Commonwealth charged Stevenson with possession of a controlled substance with intent to deliver, possession of a controlled substance, possession of drug paraphernalia, carrying firearms in public in Philadelphia, and possession of an instrument of crime. *See* 35 P.S. §§ 780-113(a)(30), (a)(16), (a)(32); 18 Pa.C.S.A. §§ 6108, 907(a), respectively.

the identity of the neighbors who had relayed information about the shooting or how they obtained it. Trial Court Opinion, 9/28/22, at 7 (emphasis in original). It thus concluded the affidavit lacked "veracity and basis of knowledge" for probable cause to believe the car held evidence of criminal activity. *Id.* at 8 (quoting *Commonwealth v. David M. Torres*, 764 A.2d 532, 537 (Pa. 2001)).

The court further found that even if the affidavit contained enough information to render the hearsay statements reliable, it would only give rise to probable cause to search the vehicle for bullet fragments. *Id.* The court observed that the affidavit contained nothing to suggest Stevenson had had a firearm, or that there were firearms in the vehicle, as the unidentified neighbors did not report that Stevenson had interacted with the shooter, possessed a firearm, or fired any shots. *Id.* at 7. Moreover, the court observed, the unidentified neighbors had never even stated that the bullet holes in the car were from the shooting that had been reported, and, while the shell casings were located at 1900 Ruan St., the car was found at 1930 Ruan St. *Id.* The court also noted that the affidavit did not include any information regarding the police investigation that took place in the seven days between the shooting and the warrant application. *Id.* at 9 n.6. The court summarized, "All told, we have shots fired, 16 shell casings, and a car down the street with some number of bullet holes located somewhere on the vehicle, from which an unknown black male allegedly ran." *Id.* at 7-8.

The court also explained that the warrant's provision allowing the police to search for "anything of evidentiary value" amounted to "*carte blanche* authorization to recover literally '*anything*.'" ***Id.*** at 9 (emphasis in original) (citing ***Commonwealth v. Grossman***, 555 A.2d 896, 899 (Pa. 1989), and ***Commonwealth v. Santner***, 454 A.2d 24, 28-29 (Pa.Super. 1982)). In this aspect, the court found the warrant to be vague and overly broad. ***Id.*** The court also noted, as to a search for ballistics evidence, the warrant failed to specify the exact place to be searched, *i.e.*, the location of the bullet holes in the car. ***Id.*** at 8 n.3. The court acknowledged that some of the items the police seized may have been in plain view from a lawful vantage point but found the record on that issue was incomplete. ***Id.*** at 8 n.4.

The Commonwealth appealed,[3] and presents the following issue: "Did the suppression court err in determining that there was no probable cause to support a warrant that authorized police to search for ballistics evidence in a car that had been struck by gunfire during a shoot-out?" Commonwealth's Br. at 4.

The Commonwealth argues the suppression court erred in conducting a *de novo* review of the issuing authority's probable cause determination, rather than giving deference to that authority when determining, in a common-sense and non-technical manner, whether there is substantial evidence in the record supporting the decision to issue the warrant. ***Id.*** at 8-9 (citing, *inter alia*,

---

[3] The Commonwealth certified in its notice of appeal that the suppression order terminates or substantially handicaps the prosecution. ***See*** Pa.R.A.P. 311(d).

*Commonwealth v. Jones*, 988 A.2d 649, 655 (Pa. 2010)). The Commonwealth posits there was substantial evidence in the record to support the finding of probable cause, as "[i]t is a common-sense inference that a search of a car riddled with bullet holes at the scene of a shooting would produce proof of ownership of the car and ballistics evidence of the shooting under investigation." *Id.* at 10. The Commonwealth thus contends the court erred in concluding the warrant failed because the affidavit did not include the number of bullet holes in the "bullet-riddled" car; the background of the police officer; or any additional information the police learned in the seven days between the shooting and the warrant application.

The Commonwealth also argues that the search for the non-ballistics items was supported by probable cause, as there was common-sense reason to believe guns, proof of ownership, and other evidence would be found in a bullet-riddled car found at the scene of a shooting. *Id.* at 14. In the alternative, the Commonwealth argues the court erred in invalidating the entire warrant, as those portions of the warrant relating to non-ballistics evidence were severable. Finally, the Commonwealth complains that the court erred in faulting the Commonwealth for failing to establish where in the vehicle the police recovered the backpack — *i.e.*, whether it was in plain view — when Stevenson had only challenged the four corners of the warrant.

We begin with the applicable standards. When deciding whether to issue a search warrant, the issuing authority must apply a "totality of the circumstances test" to determine whether probable cause exists. *David M.*

***Torres***, 764 A.2d at 537. That is, it must "make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." ***Id.*** (quotation marks and citations omitted). The issuing authority is limited to reviewing the information within the four corners of the affidavit. Pa.R.Crim.P. 203(B).

A court reviewing the probable cause determination must not conduct a *de novo* review, but "ensure that the magistrate had a substantial basis for concluding that probable cause existed." ***David M. Torres***, 764 A.2d at 537-38, 540. "[T]he reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner." ***Id.*** at 538. At the same time, the reviewing court must balance "the relative weights of the indicia of reliability (and unreliability) attending [the] information [included in the affidavit]" when considering whether there was a substantial basis to support the magistrate's probable cause determination. ***Id.*** at 540.

The basis of knowledge and veracity of anonymous sources are particularly important "where the affidavit of probable cause is almost entirely

based on information gleaned from anonymous sources." *Id.*[4] Even when an affidavit indicates the police know the identity of an anonymous source, an issuing authority must consider the person to be anonymous if the affidavit does not give the person's name or indicate that they previously provided confidential information to the police. *Id.* at 537 n.3. Therefore, a suppression court does not err in invalidating a warrant where the affidavit contains "no way for the issuing authority to tell how the anonymous sources obtained their information," or otherwise assess their reliability. *Id.* at 538; *see id.* at 539 (finding affidavit for warrant to search defendant's residence lacked probable cause where the affidavit did not set forth the anonymous sources' bases of knowledge that the defendant had been involved in a drug deal with the decedent, and there was minimal independent police investigation to corroborate the allegations).

A warrant must describe with particularity the things which are to be seized and the place to be searched. Pa.R.Crim.P. 205(A)(2), (A)(3).[5] "A warrant unconstitutional for its lack of particularity authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize." *Santner*, 454

---

[4] An identified source is inherently more reliable than an anonymous source because the person has placed himself/herself/themselves at risk for prosecution for giving false information to the police. *Commonwealth v. Butler*, 194 A.3d 145, 148-49 (Pa.Super. 2018).

[5] The protections of the Pennsylvania Constitution are more stringent in this regard than the federal Constitution. *Commonwealth v. Dougalewicz*, 113 A.3d 817, 827 (Pa.Super. 2015).

A.2d at 25 n.2. In the same vein, the warrant must not be overly broad by authorizing the seizure of "an entire set of items . . . many of which will prove unrelated to the crime under investigation." *Id.*

Accordingly, the affidavit must indicate a nexus between the specific and limited items to be seized, the place to be searched, and the alleged criminal behavior. *Id.* at 29 (citation omitted); *see also Commonwealth v. Wallace*, 42 A.3d 1040, 1049-50 (Pa. 2012) ("[P]robable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home") (citation omitted). A person's mere proximity to illegal activity does not give rise to probable cause to search their property. *See Commonwealth v. Lavelle Johnson*, 240 A.3d 575, 588-89 (Pa. 2020) (OAJC) (finding an affidavit asserting the defendant was found in an apartment with illegal contraband did not provide probable cause to search his cell phone because it did not allege he "was personally in possession of (or even aware of) the drugs, guns, or anything else related to criminal activity found in the apartment").

For example, in *Commonwealth v. Eric Torres*, 177 A.3d 263 (Pa.Super. 2017), this Court held there was an insufficient nexus between the crimes under investigation, the items to be seized, and the place to be searched. *Id.* at 272. The affidavit asserted that the defendant fled from a traffic stop, and, during his arrest, shot a police officer in the stomach. *Id.* at 270-71. The warrant allowed a search of the defendant's residence for "all ammunition or ballistics evidence . . . as well as any and all handguns, rifles,

shotguns, ammunition, gun storage boxes/containers, proof of identification, and any other items of evidentiary value." *Id.* at 272. We observed that the defendant's identification was not in doubt, and the search of the residence would not have uncovered the firearm used in the shooting, which was already in the possession of the police. *Id.* at 273.

However, in **Commonwealth v. Jones** — invoked here by the Commonwealth — the Pennsylvania Supreme Court held that a warrant may be used as a general investigative tool where the police have more than "mere suspicion" that a crime occurred and are able to describe the items to be searched for "as is reasonably possible." 988 A.2d at 657. In that case, the affidavit asserted the police responded to a call of shots fired and found the victim dead at the scene with a gunshot wound to his head. *Id.* at 651-52. Although the affidavit gave the victim's identity and did not mention drugs, the warrant sought to search the victim's nearby dormitory room for "[a]ny evidence that provides Identification/Cellular Phones, Pagers, Drugs, Drug Paraph[er]nalia, handguns, [and] bullets." *Id.* at 652.

In finding there was probable cause to search the residence for these items, the Court noted that the affidavit identified the last residence of the victim, "within which there was a fair probability that the police would find evidence of the murder that had occurred nearby," and sought specific items "which, if found, could provide leads with regard to any individuals who had spoken with or contacted the victim on the night of his murder." *Id.* at 656-57. It also stated that the police required conclusive evidence of the victim's

identification to "conduct an investigation intelligently," provide proof that a specific individual had been murdered, and "have all reasonable certainty before contacting family members to inform them that their loved one has been murdered." *Id.* At 657.[6]

Similarly, in *Commonwealth v. Harve Lamar Johnson*, 42 A.3d 1017 (Pa. 2012), the police knew a two-year old child had been assaulted inside a residence but did not know the details of the assault. *Id.* at 1030.[7] The child's mother and her boyfriend gave the police conflicting accounts, and the child's mother told the police that her boyfriend had beaten the child, potentially with a game controller and cord. *Id.* A warrant was issued to search the residence for

> Items relating to assault of [victim] including but not limited to belts, cords, game controllers, sticks, bedding material, blood, hairs, fibers, fingerprints, clothing and any and all other items associated with this assault. Also photographs, and measurements of residence including exterior, and any other items or contraband found while conducting above search.

*Id.* at 1129-30. Although the warrant allowed a broad search for "any and all other items associated with [the] assault," the Supreme Court held the warrant was not vague or overly broad, given the affidavit established the police knew the extent of the victim's injuries and the location of the assault,

---

[6] The *Jones* Court was unanimous in the result but divided on the issue of standard of review. *See Eric Torres*, 177 A.3d at 270 n.3.

[7] The child died from her injuries after the affidavit was sworn.

and the mother and her boyfriend gave conflicting accounts of how the assault occurred. *Id.* at 1031-32.

Here, the affidavit of probable cause asserted that the police responded to a radio call for gunshots, where they found fired shell casings, and, at a nearby residence, a car with multiple bullet holes. Although the initial radio call must be considered anonymous,[8] the police independently corroborated the information by locating the shell casings and car. The common-sense conclusion to be drawn from this information is that the car was illegally shot while parked on the street, and that the shell casings were discarded at that time.

Next, the affidavit asserts that "neighbors" reported an unknown black man ran from the vehicle. The reasonable assumption here is that the man was inside the vehicle when it was illegally shot. However, as the affidavit does not identify the neighbors, this information is, on its own, of limited reliability. *See David M. Torres*, 764 A.2d at 537 n.3.

The affidavit then asserts "[i]t was later found" that Stevenson owned the vehicle, and, at some point, was shot, transported to the hospital, and in stable condition. The affidavit does not state whether the affiant came upon

_____

[8] *See David M. Torres*, 764 A.2d at 538. *But see Navarette v. California*, 134 S. Ct. 1683 (2014) (holding anonymous 911 call that suspect ran reporting party off roadway was sufficiently reliable to support traffic stop where tip indicated the caller had eyewitness knowledge of the dangerous driving, was making a near-contemporaneous statement, and the 911 system records the informants voice and traces calls).

- 11 -

this information through an anonymous source, or through independent police investigation.

Nonetheless, considering that the police can determine the owner of a vehicle through its make, model, and registration number—information which the affiant included—and that the affidavit included the name of the hospital where Stevenson was convalescing, a common-sense conclusion is that this information was corroborated by the police, and reliable enough to support probable cause to believe that Stevenson is the person the neighbors reported ran from the shooting, that he owns the vehicle, and that he was shot at the same time his car was shot and the bullet fragments were discharged. **Cf. David M. Torres**, 764 A.2d at 537 (finding no probable cause where sources were anonymous with minimal police corroboration). We therefore hold the trial court erred in finding the affidavit insufficiently reliable to give rise to probable cause to search the car for ballistics evidence that might help the police determine the manner of the shooting.

However, we affirm the trial court's ruling that the affidavit did not give rise to probable cause to conduct a search for non-ballistics evidence. The affidavit gives probable cause to believe that a single crime occurred: the shooting of Stevenson and his car. Any search warrant must therefore have a nexus between that crime, the items to be seized, and the place to be searched.

First, there was no indication that Stevenson possessed the firearm used in the shooting, and common sense does not support the conclusion that the

perpetrator of a shooting would discard his firearm inside of the car he just shot. *See Eric Torres*, 177 A.3d at 272 (finding no probable cause to search residence for firearms when the search would not produce the firearm used in the shooting); *see also Lavelle Johnson*, 240 A.3d at 589 (finding no probable cause to search a person's phone where the affidavit did not allege a connection between that person and the contraband found in another's apartment).

Nor was there probable cause to search the car for the identification of the vehicle's owner, Stevenson, who was evidently **not** the perpetrator, and whose identity was already known to the police. *See Eric Torres*, 177 A.3d at 272 (finding no probable cause to search residence for identification of shooter, when his identification was not in doubt); *cf. Jones* (finding probable cause to search victim's residence for evidence confirming victim's identity, necessary for conducting murder investigation intelligently and correctly informing next of kin).

Nor did the affidavit provide a nexus to allow a search for photographs or "anything of evidentiary value" in Stevenson's car. Although a search warrant may be used as an investigatory tool, and here, the police had reasonably definitive knowledge that an illegal shooting had occurred, this was not a particularized description of items that would probably be found in the car. Nor, as was the case in **Harve Lamar Johnson** and **Jones**, is this a case involving homicide or the assault of an infant, where a broader, more generalized search of a silenced victim's property might be warranted.

Our law demands a showing of probable cause to believe that **particular evidence** of **the crime that was committed** will be found **in a particular place**. Categorial assumptions do not suffice. **See Commonwealth v. Jacoby**, 170 A.3d 1065, 1085 (Pa. 2017) (rejecting assumption that felons do not discard firearms, even those used in murders); **Commonwealth v. Ani**, 293 A.3d 704, 727 (Pa.Super. 2023) (rejecting assumption that home invaders are likely to have used their cell phones to aid in the commission of their crimes); **Commonwealth v. Nicholson**, 262 A.3d 1276, 1282 (Pa.Super. 2021) (rejecting affiant's "boilerplate" assertion that his training and experience gave probable cause to believe that suspected drug dealer kept drugs, weapons, and other contraband in his home). In short, the instant affidavit alleged a specific crime, but the warrant's provisions to search the entire car for firearms, identification, photographs, or "any" evidence was not supported by probable cause.

Because we find there was probable cause to support a search of the car for ballistics evidence, but not the other items, we find the court erred in failing to sever the warrant. Under the doctrine of severability, a suppression court might suppress only the seized evidence for which the warrant did not provide probable cause to search. **Commonwealth v. Anderson**, 40 A.3d 1245, 1248 (Pa.Super. 2012). Here, the court should have only suppressed the non-ballistics evidence which lacked a nexus with the crime alleged in the affidavit. We therefore reverse the court's grant of Stevenson's suppression motion insofar as it pertains to the ballistics evidence.

As to the Commonwealth's assertion that some of the evidence may be admissible under the plain view doctrine or the inevitable discovery doctrine, we find that argument waived by the Commonwealth's failure to present it to the court below. **See** Pa.R.A.P. 302(a). The trial court did not prevent the Commonwealth from making this argument in response to the motion to suppress.

Order affirmed in part and reversed in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/15/2023</u>