J-S45032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: H.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: THE COMMONWEALTH | : | |
| OF PENNSYLVANIA | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 672 MDA 2024 |

Appeal from the Order Entered May 9, 2024
In the Court of Common Pleas of Lycoming County Juvenile Division at
No(s): CP-41-JV-0000035-2024

BEFORE: OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED: MARCH 13, 2025**

The Commonwealth of Pennsylvania appeals from the order granting H.C.'s motion to suppress and dismissing the Commonwealth's delinquency petition. The Commonwealth argues the court erred in concluding the police lacked reasonable suspicion to stop H.C. We reverse.

The Commonwealth filed a petition alleging H.C., a minor, was delinquent for committing the offenses of defiant trespass and evading arrest or detention on foot.[1] H.C. filed a motion to suppress.

At a hearing, Sergeant Brian McGee testified that while on routine patrol, he turned into a Conoco Gas Station. N.T., 4/25/24, at 3. He noticed two people, one of which was H.C., walking to the front of the store. *Id.* They were both "wearing balaclava style masks covering their face, wearing sweatshirts,

---

[1] *See*, respectively, 18 Pa.C.S.A. §§ 3503(b)(1)(iii) and 5104.2(a).

dark-colored clothing, and one individual had his hands tucked into the front of his pants as if he was holding something." *Id.* Sergeant McGee agreed that it was winter, and "an individual wearing a sweatshirt in the winter would make sense[.]" *Id.* at 12. However, he said that "the temperature of the day was high 40s, into the 50s, and there was absolutely no reason to keep wind off your face or keep yourself warm at that point." *Id.* at 4.

Sergeant McGee testified that H.C. was "very interested in where I was going and what I was doing and the direction of my travel." *Id.* at 3. H.C. dropped a cell phone, possibly two, and continued walking. *Id.* at 12, 14. Sergeant McGee confronted him, saying, "You're so interested in what I'm doing and where I'm going that you dropped a cell phone and you didn't even recognize that you dropped a cell phone." *Id.* at 3. H.C. picked up the cell phone and thanked Sergeant McGee, while the other person walked to the front of the store. *Id.* at 3-4. H.C. and the other person spoke to each other, and began walking east on High Street, away from the store. *Id.* at 4.

Sergeant McGee decided to follow them because he believed "they were wearing the masks strictly to hide their identity" and they "redirected their path of travel upon seeing" him. *Id.* at 4. Sergeant McGee also testified that there had recently been a robbery of a nearby Uni-Mart, and the description of the perpetrator "was a younger or juvenile-aged male wearing dark clothing." *Id.* at 5.

Sergeant McGee drove south and then circled back to High Street, emerging one block further east, where he believed H.C. and his companion

would then be walking. *Id.* at 5-6. Sergeant McGee testified he did not see H.C. or the other person, and so he crossed High Street and headed north. *Id.* at 6. Sergeant McGee encountered an unidentified person who "informed [him] of two individuals in the alley way just south of [their] location." *Id.* at 7. Sergeant McGee traveled south again and turned west onto Monroe Place, where he found H.C. and the other person walking west on the sidewalk. *Id.* at 6, 13. Sergeant McGee spoke with them, and then decided to stop them. *Id.* at 8. H.C. fled.

The juvenile court found the police did not have reasonable suspicion to stop H.C. *See* Order, filed May 9, 2024, at 2.[2] It noted that Sergeant McGee had not decided to stop H.C. when he began walking away from the Conoco store, and that when he did order him to stop, H.C. was "merely walking down the street." *Id.* It also considered that Sergeant McGee had not observed any weapons or contraband. *Id.* It concluded Sergeant McGee had stopped H.C. "simply for walking down the street after being informed by a citizen that they were observed walking through a nearby alley[.]" *Id.*[3] The court also concluded that because H.C.'s ensuing flight and trespass were the result of an illegal stop, the Commonwealth lacked probable cause to support the charges. The court granted H.C.'s motion to suppress and dismissed the Commonwealth's delinquency petition.

_____

[2] The order is dated April 30, 2024.

[3] The court relies on this order to satisfy Pa.R.A.P. 1925(a). *See* Trial Court Opinion, 7/19/24, at 3.

The Commonwealth appealed. It raises one issue: "Whether the trial court erred as a matter of law in determining that there was not reasonable suspicion for the initial police stop of the juvenile." Commonwealth's Br. at 6.

The Commonwealth argues the police reasonably suspected that H.C. and the other juvenile "were planning to rob a convenience store." *Id.* at 20. It points out that the juveniles "were dressed as if they were trying to conceal their identities"; "decided not to enter the store only after spotting the police officer and subsequently walked off in the opposite direction"; and were each "carrying a bag capable of concealing a handgun." *Id.* Additionally, one of the juveniles "had his hand tucked down the front of his pants with an item in his waist area, consistent with a person concealing a firearm." *Id.* Furthermore, "[a]fter turning and walking east, [the juveniles] later turned back and started walking west, which the officer reasonably inferred to be an effort to elude the police." *Id.* The Commonwealth likens these facts to those in *Terry v. Ohio*, 392 U.S. 1, 5-8 (1968), where the United States Supreme Court found reasonable suspicion based on a police officer's suspicion that the defendant and two other people, who were pacing and peering in store windows, were casing a robbery. H.C. has not filed an appellee's brief.

On review of an order granting a defendant's motion to suppress, we consider the suppression record to determine whether the Commonwealth carried its burden to establish by a preponderance of the evidence that the challenged evidence was not obtained in violation of the defendant's rights. *Commonwealth v. Barnes*, 296 A.3d 52, 55 (Pa.Super. 2023). "[W]e are

bound by that court's factual findings to the extent that they are supported by the record, and we consider only the evidence offered by the defendant, as well as any portion of the Commonwealth's evidence which remains uncontradicted, when read in the context of the entire record." *Id.* (citation omitted). However, we are not bound by the trial court's legal conclusions, which we review *de novo*. *Id.*

To justify an investigatory detention, police must be "able to point to specific and articulable facts leading him to suspect criminal activity is afoot." *Commonwealth v. Butler*, 194 A.3d 145, 148 (Pa.Super. 2018) (internal quotation marks and citation omitted). "Reasonable suspicion is a less demanding standard than probable cause[.]" *Id.* (citation omitted). The reasonable suspicion inquiry requires a review of the totality of the circumstances and the inferences derived therefrom, given the police officer's training and experience. *Id.* "[A] combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Commonwealth v. Garcia*, 311 A.3d 1138, 1145 (Pa.Super. 2024) (citation omitted), *appeal denied*, No. 223 WAL 2024, 2025 WL 99507 (Pa. Jan. 15, 2025).

For example, unprovoked flight from the police, alone, does not give rise to reasonable suspicion. However, if the flight occurs in a high-crime area, these facts combined may support an investigatory stop. *See Barnes*, 296 A.3d at 59; *see also Commonwealth v. Mayo*, 496 A.2d 824, 826 (Pa.Super. 1985) ("Though flight alone will not justify a stop . . . a combination

of circumstances, none of which taken alone would justify a stop, may be sufficient") (citation omitted). Our Court has repeatedly found reasonable suspicion where a suspect retreated from or attempted to evade the police after engaging in other suspicious activity. *See*, *e.g.*, *Commonwealth v. Dix*, 207 A.3d 383, 389 (Pa.Super. 2019) (finding reasonable suspicion where defendant put something in his waistband and began walking to corner store, but retreated and placed item back in truck once he saw the police); *Commonwealth v. Carter*, 105 A.3d 765, 774-75 (Pa.Super. 2014) (*en banc*) (finding reasonable suspicion where defendant was in a high-crime area, had a "weighted and angled bulge in his coat pocket," walked away when he saw the police, and turned his body "at least three times, to conceal the bulge").

We have also considered the wearing of face coverings to be relevant to the reasonable suspicion analysis, particularly where it is not warranted by the weather. *See Mayo*, 496 A.2d at 826 (finding police had reasonable suspicion where three men had been seen earlier putting on ski masks outside of a bank, the police found three men wearing ski masks less than a mile away from the bank, and the men drove away when the police approached, with the two passengers ducking from view).[4]

---

[4] *See also Commonwealth v. Campbell*, 319 A.3d 3, *5 (Pa.Super. 2024) (unpublished mem.) (finding reasonable suspicion where defendant was wearing overcoat, camouflage pants and ski mask in 66-degree weather, defendant retreated when he saw the police, and defendant attempted to conceal his body by walking behind a car and walking with his body angled when the police approached).

Here, Sergeant McGee testified that he suspected H.C. was engaged in criminal activity because he was wearing dark clothing, and a different store in the neighborhood had recently been robbed by a juvenile wearing dark clothing; H.C. had his face covered, which the sergeant found was not justified by the weather, and from which the sergeant inferred H.C. was attempting to conceal his identity; he was watching the sergeant's movements; he and his companion did not enter the Conoco, which the sergeant attributed to his own arrival; H.C. and his companion crossed High Street and started walking west down an alley after Sergeant McGee had been following them east and had turned south to circle the block.

Therefore, the court's finding that H.C. had been "merely walking down the street" is not supported by the record. Rather, the uncontradicted evidence was that, while wearing a balaclava in temperate weather, H.C. approached a store; left after he saw the police, without having entered the store; and then altered his course of travel to evade the police. Sergeant McGee had reasonable suspicion to stop H.C. and investigate. **See Carter**, 105 A.3d at 775.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/13/2025